Demmery et al., Appellants, *v.* National Union Fire Insurance Company.

Argued March 14, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Clyde W. McIntyre*, with him *Hurwitz, Klein, Meyers & Benjamin*, for appellants.

*David C. Eaton*, with him *W. E. Shissler*, and *Nauman, Smith, Shissler & Hall*, for appellee.

*George H. Hafer, William H. Wood*, and *Metzger, Hafer, Keefer, Thomas and Wood*, for amicus curiae.

*Robert R. Rice, Samuel A. Schreckengaust, Jr.*, and *McNees, Wallace & Nurick*, for amici curiae.

*William A. Goichman*, with him *Leonard Sagot*, for amicus curiae.

OPINION BY WATKINS, J., June 16, 1967:

This is an appeal from a judgment entered on the pleadings, by the Court of Common Pleas of Dauphin

County, in favor of the defendant-appellee, National Union Fire Insurance Company and against the plaintiffs-appellants, Wayne E. Demmery and Robert Rivetti. The matter was before the court below on motions by both parties for judgment on the pleadings. The court below aptly stated the issue involved as follows:

"The question involved is the right of an insurance company, in a policy in which medical payment coverage is one of the risks, to provide that upon making such medical payments to the insured or his guest passengers the company shall be subrogated to the rights of the insured or the person receiving such payments. Plaintiffs take the position that such provision in a policy of insurance is against public policy and void and that the company must make the medical payments regardless of the fact that the insured or other beneficiary has recovered from the tortfeasor and has given him a release, thus making it impossible for the company to be subrogated.

"The defendant company on the other hand avers that the subrogation provision in the policy is valid; not contrary to public policy; and that since the plaintiffs cannot and will not execute the required agreement of subrogation the company need not make the medical payments.[1]" They brought suit against the

---

[1] The policy of insurance provided, in pertinent part: "Medical Expense Coverage: The Company will pay, on behalf of the insured, all reasonable medical expense incurred within one year from the date of accident for bodily injury caused by accident and sustained by (1) the named insured or a relative while occupying or through being struck by an automobile or trailer of any type; (2) Any other person while occupying (a) an owned automobile while being used by an insured or (b) a non-owned automobile, if the bodily injury results from its operation or occupancy by an insured; provided that no such payment shall be made unless the person to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be

driver of the other automobile and settlement was reached and both were paid in settlement of their claims. The court below points out that: "Although plaintiffs deny prior knowledge of the fact they admit that defendant became obligated to make a contribution in the amount of $1,625 in settlement of the claim of Rivetti against the tortfeasor, in which Demmery was joined as a third-party defendant."

Defendant was duly notified of the accident and that both plaintiffs were injured and would present

---

applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor, against any insured because of bodily injury arising out of any accident to which the Liability Coverage applies."

Paragraph 14 of the Conditions section: "In the event of any payment under the Medical Expense Coverage of this policy, the company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

The Subrogation agreement which defendant asked plaintiffs to execute reads as follows: "In consideration of the payment to me or on my behalf of the sum of                    Dollars by National Union Fire Insurance Company of Pittsburgh, Pa. the receipt of which is hereby acknowledged, I hereby release and discharge the said insurance company from any and all liability whatsoever under the medical payment provisions of Policy No.                    issued to                    by the said insurance company on account of an accident occurring on or about                    resulting in bodily injuries to

Subrogation: I hereby covenant that no release has been or will be given to or settlement or compromise made with any third party who may be liable in damages to me and I in consideration of the payment made under this policy hereby subrogate the said Company to all rights and causes of action I have against any person, persons or corporation whomsoever for damage arising out of or incident to said accident for medical expenses and authorize said Company to sue in my name but at the cost of the Company any such third party, pledging full cooperation in such action."

claims under the medical payment plan. The company insisted that it would not pay until the necessary subrogation instruments were executed.

There is a rule of law forbidding the assignment of personal injury claims in tort. *Sensenig v. Pennsylvania Railroad Co.*, 229 Pa. 168, 172, 78 A. 91 (1910) : "A right of action strictly personal is not assignable and the general doctrine is, both in law and equity, that a right of action for a pure tort is not the subject of assignment: . . .". See also: *Marsh v. Western N. Y. & Pa. Ry. Co.*, 204 Pa. 229, 53 A. 1001 (1903) ; *Sniderman v. Nerone*, 336 Pa. 305, 9 A. 2d 335 (1939), affirming per curiam 136 Pa. Superior Ct. 381, 7 A. 2d 496 (1939).

However, reasoning in more modern decisions makes a clear distinction between assignment of a tort action and subrogation of medical payments under a contract. "Subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim." 6 C.J.S. Assignments §2(b)(12) 1937.

The court below in an able opinion by R. DIXON HERMAN, J., reviewed the cases of our own and other jurisdictions and we adopt his careful analysis:

"In Michigan, in 1954, in Michigan Medical Service v. Sharpe, 339 Mich. 574, 64 N.W. 2d 713 (1954), the Supreme Court of that State had before it the case of one Sharpe who had been injured in an automobile accident and who had received medical payments from Michigan Medical Service under a policy or contract containing a subrogation clause. (In a companion

case arising out of the same accident and involving Michigan Hospital Service and a policy or contract which did not contain a subrogation clause, the right of subrogation was denied.) The court, in here upholding the subrogation agreement, said: 'The subrogation clause and its provision that the subscriber and his dependents shall execute and deliver such assignments of claim or other papers as may be necessary to secure plaintiff's rights against a tortfeasor are binding on the subscriber and his dependents who accepted benefits under the certificate . . .' (64 N.W. 2d 713, 714) See Annot., 43 A.L.R. 2d 1177-78 (1955).

"The Superior Court of New Jersey, in Smith v. Motor Club of America Ins. Co., 54 N.J. Super. 37, 148 A. 2d 37 (1959), aff'd, 56 N.J. Super. 203, 152 A. 2d 369 (1959), had before it a suit which had been brought by a passenger of an insured against her insurance carrier seeking the recovery of medical expenses previously paid by a tortfeasor. The insurance policy there had a subrogation clause and the requirement that before payments were made under the policy a subrogation agreement should be signed. In the absence of such signed subrogation agreement the company refused to pay. Plaintiff, in demanding payment, based her claim on the principle that such subrogation agreement was illegal and void as against public policy. The court held in favor of the insurance carrier, pointing out that the legislature declares the policy and having clothed its insurance commissioner with authority to strike out clauses in insurance policies unfair and inequitable, and he having failed to strike out the subrogation clause it was not against public policy.[2]

---

[2] It was pleaded and admitted that a policy form containing the provisions as set forth in the first and second paragraphs of footnote 1 herein was filed with the Insurance Department of the Commonwealth of Pennsylvania, and approved by it September 1, 1959.

"In Damhesel v. Hardware Dealers Mutual Fire Ins. Co., 60 Ill. App. 2d 279, 209 N.E. 2d 876 (1965), the appellate court of Illinois had before it a case on all fours with the instant case and in the same procedural posture; i.e., motion for judgment on the pleadings. The court had no hesitation in finding that the subrogation clause was valid and not contrary to public policy and that the person demanding the medical payments having executed a general release to the tortfeasor and thus being unable to comply with the subrogation clause in the contract, could not recover. This subrogation clause was, word for word, identical with the clause in the policy in the instant case. Illinois clearly forbids 'assignment of a personal tort' and the court points out that the subrogation clause here does not constitute an assignment of a personal tort, quoting in part from 6 C.J.S., Assignments §2 (b) (12) (1937): (supra) . . .

"A parallel case in the same jurisdiction, Bernardini v. Home and Automobile Ins. Co., 64 Ill. App. 2d 465, 212 N.E. 2d 499 (1965), was decided the same way and here it was also pointed out that since the insurance department was vested by the legislature with duties concerning the enforcement of insurance laws and since the department took no action against the policy in question, it was not contrary to public policy.

"Lower courts in both Ohio and New York have reached the same conclusion that for one reason or another a subrogation clause concerning medical payment benefits in insurance policies is valid and enforceable. See Miller v. Liberty Mutual Fire Ins. Co., 48 Misc. 2d 102, 264 N.Y. Supp. 2d 319. (1965); Travelers Ins. Co. v. Lutz, 3 Ohio Misc. 144; 210 N.E. 2d 755 (1964). The Ohio case points out that an insured and an insurance company should be able to contract for this subrogation because it does not result in any unfair or improper result and is not against public policy.

"Plaintiffs point to three jurisdictions in which the courts have reached opposite results on the same or similar facts. The first such case, and the one on which the other two principally or partially rely, is Peller v. Liberty Mutual Fire Ins. Co., 34 Cal. Rptr. 41 (1963). In this case the District Court of Appeals for the Fourth District of California had before it an appeal from a judgment on the pleadings in a case in which the subrogation clause was almost identical to the one in the instant case, and solely because the legislature had by specific legislation approved the common law rule against assignments of choses in action based upon injury to the person, denied the right of the insurance company, holding that this subrogation was in effect an assignment. The court pointed out, however, that a persuasive argument could be made that the old rule is obsolete and anachronistic and no longer applicable to reimbursement of medical and hospital expenses but felt that any change should come from the legislature.

"Travelers Indemnity Co. v. Chumbley, 394 S.W. 2d 418 (1965) and Harleysville Mutual Ins. Co. v. Lea, 2 Ariz. App. 538, 410 P. 2d 495 (1966) followed Peller, both finding that the subrogation was actually an assignment and void.

"We believe that the better reasoning is contained in the cases in which the subrogation clause is held to be valid and that a more equitable result will be reached if we follow this reasoning.

"We believe, too, that there is support for this reasoning in other Pennsylvania cases. The courts of Pennsylvania have approved subrogation in cases analogous to the instant case and where assignments would presumably not have been allowed. See Topelski v. Universal South Side Autos, Inc., 407 Pa. 339 (1962); Phila. v. Phila. Rapid Transit Co., 337 Pa. 1 (1940);

Furia v. Phila., 180 Pa. Superior 50 (1955); and Potoczny v. Vallejo, 170 Pa. Superior 377 (1952).

"In the Furia case the City of Philadelphia was subrogated to the right of a policeman against a tortfeasor, who had injured him, for money paid by the City to the policeman in lieu of wages, in spite of the fact that no statute existed giving the City this right.

"In the Topelski case the same result was reached in favor of the County of Allegheny where a police officer was injured and recovered from the wrongdoer. There it was said, p. 352, 'There can be no question of the right of the County to recover by way of subrogation from the third party tortfeasor all the salary, medical and hospital expenses paid to or for Topelski.'

"The legislature in the Workmen's Compensation Law, Act of June 2, 1915, P. L. 736, Art. III, §319 (77 P.S. §671), as amended, has provided for subrogation in favor of an employer against a wrongdoer, and in Neal v. B. R. & P., 103 Pa. Superior Ct. 218 (1931), this subrogation was extended to cover the employer's Workmen's Compensation insurance carrier.

"In view of all this it is difficult to see how it can be said that subrogation of medical payment benefits in insurance policies is against public policy or void.

"We conclude that the subrogation clause in the policy here in question is valid and enforceable and the plaintiffs have by their own act made it impossible for them to comply with its terms and thus being unable to execute the subrogation agreement, judgment must be entered against them and in favor of the defendant."

See also: Occupational Disease Act of 1939, June 21, P. L. 566, No. 284, §319, as amended, 77 PS §1419; *Magill v. Westinghouse Electric Co.,* 209 Pa. Superior Ct. 342, 228 A. 2d 22 (1967).

Judgment affirmed.