**Eugene A. FISHER, Administrator of the Estate of Julie Lynn Fisher, Deceased, Appellant,**

v.

**USAA CASUALTY INSURANCE COMPANY, Appellee.**

No. 91–1801.

United States Court of Appeals, Third Circuit.

Argued March 11, 1992.

Decided Aug. 25, 1992.

Richard J. Orloski (argued), Orloski & Hinga, Allentown, Pa., for appellant.

William E. Schantz (argued), Snyder, Doll & Schantz, P.C., Allentown, Pa., for appellee.

Before: HUTCHINSON, ALITO, and ROTH, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

An insured sued his insurer seeking underinsured motorist coverage under automobile insurance policies. The district court granted summary judgment for the insurer on the ground that the insured violated a policy provision requiring the insurer to consent to any settlement, 778 F.Supp. 232 (E.D.Pa.1991). We will reverse because the insurer effectively denied coverage when informed of the proposed settlement, and we will remand to the district court for further proceedings.

### I.

In 1986, Julie Lynn Fisher died as a result of injuries sustained when a truck collided with the automobile she was driving. Her father, Eugene Fisher (hereinafter "Fisher"), was granted letters of administration over her estate. He then filed actions in the United States District Court for the Eastern District of Pennsylvania against the company by which the truck driver was allegedly employed and another company to which the driver's services had allegedly been leased. Fisher offered to settle these claims for one million dollars, the limit of the companies' insurance coverage.

Fisher himself had two automobile insurance policies with USAA Casualty Insurance Company, and together these policies provided $300,000 in underinsured motorist's coverage. In May 1987, Fisher's attorney wrote to USAA regarding the proposed settlement. Fisher's attorney and USAA exchanged letters for several months. Finally, in December 1987, Fisher and the trucking companies entered into a settlement under which the estate received one million dollars and the companies, their employees, and others were released from all further liability.

Fisher's attorney then wrote to USAA informing the company of the settlement and demanded $300,000 under the underinsurance provisions of Fisher's policies. When USAA refused, Fisher initially demanded arbitration, but he subsequently abandoned arbitration and sought a declaratory judgment in the same federal court. On cross-motions for summary judgment, the district court granted summary judgment for USAA. The court first held that Fisher was not obligated to participate in arbitration. While noting that Fisher had initially requested arbitration, the court concluded that Fisher's conduct did not "warrant [refusing] him recourse to [the] court" since USAA had failed to demonstrate that it had suffered "any prejudice resulting from [Fisher's] decision to seek a judicial determination, or that [Fisher had] obtained any advantage by his conduct." Moreover, relying on *Meyer v. State Farm Ins. Co.*, 812 F.2d 705 (3d Cir.1988), and various decisions of the United States District Court for the Eastern District of Pennsylvania, the court held that Fisher was entitled to a judicial determination because his dispute with USAA concerned coverage rather than fault or damages.

Turning to the issue of coverage, the court held that Fisher could not recover because he had not complied with a policy provision requiring an insured to obtain USAA's consent before settling. The court rejected Fisher's argument that USAA could not rely on the consent-to-settle provision because it had denied coverage or unreasonably refused to consent to the settlement. Fisher then appealed.

### II.

■ Fisher first argues that the policy provision precluding coverage when the insured settles with the tortfeasor without the consent of the insurer is unenforceable under the law of Pennsylvania. Based on two decisions of the Superior Court of

Pennsylvania concerning similar issues, we disagree.

In *Melendez v. Pa. Assigned Claims Plan*, 384 Pa.Super. 48, 557 A.2d 767 (1989), the Superior Court held that a claimant who had executed a release in favor of the uninsured motorist who injured her could not obtain benefits from an Assigned Claims Plan insurer under Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. § 1701 et seq. The court relied on a provision of that law, 75 Pa.Cons.Stat.Ann. § 1756, which gives an Assigned Claims Plan insurer the right to subrogation "in accordance with the tort liability law" of Pennsylvania. The court also relied on Pennsylvania caselaw "dealing with both contractual and statutory subrogation issues" and holding that "when an injured party extinguishes an insurer's subrogation right by settling and releasing an alleged tortfeasor, the injured party loses his right to recover from the insurer." 557 A.2d at 769.

Likewise, in *Dyer v. Travelers*, 392 Pa.Super. 202, 572 A.2d 762 (1990), the court held that a claimant who had obtained a final arbitration award with respect to the other parties involved in the accident could not obtain benefits from an Assigned Claims Plan insurer. The claimant argued that she had not extinguished the insurer's subrogation right because she could assign her award to the insurer, but the court found that the insurer's subrogation right had been prejudiced because it "had no control over any aspect of the proceedings which resulted in the arbitration award." 572 A.2d at 764.

*Melendez* and *Dyer* establish that the right of subrogation under the Motor Vehicle Financial Responsibility Law implicitly requires an insured to seek the insurer's consent before settling. This principle is fundamentally inconsistent with Fisher's argument here, i.e., that Pennsylvania public policy prohibits contractual provisions expressly imposing a similar obligation upon insureds.

Fisher relies on decisions by courts of other jurisdictions holding consent-to-settle provisions unenforceable on public policy grounds.[1] These decisions, however, are inconsistent with both the decisions and the reasoning in *Melendez* and *Dyer*.

Without mentioning *Melendez* or *Dyer*, Fisher's brief argues that the Pennsylvania Legislature "did not intend to permit consent-to-settle claims with respect to coverage governed by the [Motor Vehicle] Financial Responsibility Law." Appellant's Brief at 11. Fisher notes that this statute lacks a provision expressly authorizing such clauses, whereas the Pennsylvania Uninsured Motorist Act, 40 Pa.Stat.Ann. § 2000(e)(2), contains such a provision. Fisher therefore contends that the omission of such a provision from the Motor Vehicle Financial Responsibility Law signified legislative disapproval. In *Melendez* and *Dyer*, however, the Superior Court noted this distinction between the two laws but nevertheless held that consent to settle was required under the Financial Responsibility Law.

■ In a diversity case such as this one, the decisions of an intermediate state court should not be disregarded unless "other persuasive data" show that the highest court of the state would decide otherwise. *West v. American Telephone & Telegraph*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). *See also Northern Ins. Co. v. Aardvark Assocs.*, 942 F.2d 189, 193 (3d Cir.1991). In this case, we predict that the Pennsylvania Supreme Court would follow *Melendez* and *Dyer* and hold that the consent-to-settle provision of the policies in question are enforceable.

## III.

■ Fisher also argues that USAA could not invoke the consent-to-settle clause be-

---

1. *See e.g., Longworth v. Ohio Casualty Group of Ins. Cos.*, 213 N.J.Super. 70, 516 A.2d 287 (Law Div.1986), *aff'd*, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988) (both insurer subrogation right and consent-to-settle requirements unen-

forceable in underinsured motorist policies under New Jersey law). Other state courts have ruled such clauses enforceable. *See e.g., March v. Mountain States Mut. Casualty Co.*, 101 N.M. 689, 687 P.2d 1040 (1984).

cause it was not prejudiced by the settlement.

Two district court decisions support Fisher's argument. In *Prudential Property & Casualty Ins. Co. v. Nayerahamadi*, 593 F.Supp. 216, 218 (E.D.Pa.1984), the court denied the summary judgment motion of an insurer that relied on a consent-to-settle clause since the court could not determine whether the settlement was reasonable. The court wrote:

> [A]n insurance company has a duty to consent to a reasonable settlement.... [The insurer must] demonstrate some prejudice to it resulting from the defendant's failure to obtain [the insurer's] consent to the settlement.... If [the settlement] were reasonable, [the insurer] could not have withheld consent to the settlement, and thus would not have been prejudiced by [the insured's] failure to obtain prior approval of the settlement. If there was no harm done to [the insurer], the consent-to-settle clause should not block [the insured's] recovery of benefits under the policy.

In *Wheeler v. Nationwide Mut. Ins. Co.*, 749 F.Supp. 660 (E.D.Pa.1990), the court denied an insurer's summary judgment motion on similar grounds. The court observed that the settlement the insured had reached with the tortfeasor appeared to be reasonable and that the insurer had not explained how the release executed by the insured had prejudiced the insurer. The court continued: "[The insurer did] not specify the terms or conditions of the release, and [did] not indicate how solvent the underinsured motorist is.... [W]hether [the insurer] was prejudiced [was] still a genuine issue of material fact...." *Wheeler*, 749 F.Supp. at 663.

Under these cases, if a settlement is reasonable and not prejudicial to the insurer, the insured's failure to seek consent is irrelevant. We are not persuaded, however, that the Pennsylvania Supreme Court would adopt this rule. Neither *Nayeraha-*

*madi* nor *Wheeler* cited any Pennsylvania authority that supports this rule, and it does not appear that any Pennsylvania state court decision has explicitly required any showing of prejudice before enforcing a consent-to-settle clause. In both *Melendez* and *Dyer*, the mere fact that the insured destroyed the possibility of subrogation without the consent of the insurer was held to be sufficient to preclude recovery under the policy. In neither case did the court determine the financial condition of the tortfeasor or otherwise consider the practicalities of subrogation in determining that the insured could not recover under the policy. On the contrary, *Dyer* suggests that merely by proceeding against the tortfeasor the insured harms the interests of the insurer in such a way so as to constitute prejudice:

> As [the insurer] correctly argued in its appellate brief, "... in any litigation the parties involved are presented with choices at every stage of the proceedings. Strategy and efforts at compromise pervade ... the case. The degree of ... diligence and competence with which a case is handled often means the difference between great success and utter failure." Under the [Financial Responsibility Act] the statutory right of subrogation includes the right to decide how to proceed against a tortfeasor in order to best preserve the funds in the Assigned Claims Plan.
>
> In the instant case, [the insured] proceeded without consent of [the insurer] and [the insurer] was therefore not in a position to assert [the insured's] rights. [The insurer] had no control over any aspect of the proceedings which resulted in the arbitration award. Appellant so prejudiced [the insurer's] right to subrogation as to extinguish it.

*Dyer*, 572 A.2d at 764.[2]

We predict that the Pennsylvania Supreme Court would not follow the rule ap-

---

**2.** In *Dyer*, the subrogation right was provided by statute to the insurer as a designee of the Assigned Claims Plan. 75 Pa.Cons.Stat.Ann. § 1756 (Purdon Supp.1991). In this case, subro-

gation is provided by the terms of the policy. Nevertheless, the need for protection of the subrogation right remains the same.

plied in *Nayerahamadi* and *Wheeler.* We therefore do not apply that rule here.[3]

## IV.

Fisher next argues that USAA may not rely on the consent-to-settle clause both because USAA unduly delayed in responding to the settlement proposal and because it ultimately denied coverage. We agree that USAA denied coverage.

■ Once presented with a request for consent, an insurer is not free to deny coverage under the policy terms and later deny coverage on the ground that the insured failed to obtain its consent to settle. An insurer that denies liability "on the ground that the loss was not covered by the insurance contract" may not avoid liability on the ground that the insured destroyed the insurer's right to subrogation under the policy by settling with and releasing the tortfeasor. *Roberts v. Fireman's Ins. Co. of Newark,* 376 Pa. 99, 101 A.2d 747, 750 (1954). "An insurer's repeated and persistent denial of liability under the policy may permit the insured to sue the tortfeasor without forfeiting his claim against his insurer." *Bradford v. American Mut. Liability Ins. Co.,* 213 Pa.Super. 8, 245 A.2d 478, 480 (1968). "It would [obviously be] an unavailing effort for the [insured] to [seek] the [insurer's] consent for the settlement when he had already been advised by the [insurer] that it considered his policy coverage to be inapplicable," and therefore no such consent is required in such a case. *Kolbe v. Aegis Ins. Co.,* 370 Pa.Super. 539, 537 A.2d 7, 8 (1987).

■ Nor may an insurer, once presented with a demand for consent, unduly delay its decision regarding coverage. In *Daley–Sand v. West Am. Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965 (1989), the insureds notified the insurer of the settlement offer and asked for its consent to settle. For more than two months, the insurer refused either to consent, deny coverage, or admit coverage. Instead, it claimed that it was investigating whether its consent would destroy its subrogation rights. *Id.* 564 A.2d at 967. Six months after the initial request for consent, the insureds, apparently still without answer from the insurer, filed suit to clarify their rights. The Court of Common Pleas held that, under the circumstances, the insureds could settle without violating the consent-to-settle clause of their policy, but the court gave the insurer 30 days to take the alternative course of paying the insured the amount of the settlement offer and pursuing its subrogation right against the tortfeasor. The Superior Court affirmed. The court stated that the insurer was not entitled to "take as long as it chooses to research its subrogation opportunities and thus to indefinitely postpone payment of [uninsured motorist] benefits." *Id.* at 969. The court wrote that the insurer had "presented no evidence that its withholding of consent was reasonable.... [N]either [did] it attempt to show that its withholding of consent was in good faith...." *Id.* at 970.

Taken together, these Pennsylvania cases hold that an insurer possessing the right to insist upon consent to a settlement by its insured must either (a) deny coverage under the policy (which allows the insured to settle and then litigate or arbitrate the issue of policy coverage at a later time), (b) admit coverage and grant consent, or (c) admit coverage, deny consent, pay the insured's claim, and pursue its subrogation rights by asserting the insured's claims against the tortfeasor. In any event, so long as the insurer is presented with either a demand for consent or a claim and sufficient information regarding the proposed settlement, it must exercise one of these options without undue delay.

**3.** If, however, the Pennsylvania courts were to adopt such a rule, we believe that they would place upon the insured the burden of proving that a settlement was reasonable and not prejudicial to the interests of the insurer. As between the insured and the insurer, it is the insured who possesses more information relevant to these questions—e.g., information about the strength of the insured's case against the tortfeasor, the insured's damages, the terms of any insurance coverage possessed by the tortfeasor, existence of other assets owned by the tortfeasor, etc. Thus, the insured is in the best position to offer such proof at trial.

In reviewing the grant of summary judgment in this case, we must determine if Fisher submitted a request for consent or a claim and if he provided USAA with sufficient time and information to decide how to respond. If he did so, USAA had the opportunity to exercise one of its options and thus may not raise Fisher's failure to obtain its consent as a defense to coverage under the policy.

As noted above, counsel for Fisher wrote to USAA on May 28, 1987. This letter notified the insurer that Ms. Fisher had been killed in an auto accident, that counsel had filed a suit against the tortfeasor, and that the wage claim alone had been valued at $1.5 million. The letter continued:

We recently learned in the litigation that the tortfeasor is underinsured, namely, only one million dollars in insurance coverage.

On behalf of the estate, we are herewith giving you notice of this underinsurance claim. Additionally, be advised that we offered to settle for the policy limits of one million dollars PROVIDED that the settlement is effected by Friday, June 5, 1987. Copy of demand for settlement is enclosed.

USAA responded on June 11, 1987. App. at 93. Its letter acknowledged the letter from Fisher "whereby you advised us of the underinsurance claim." *Id.* The letter quoted a policy provision to the effect that coverage was offset by recovery from other sources. It continued (App. at 93):

In the event any recovery you receive from the tort feasor exceeds the applicable policy limits, we will be unable to assist you under the Underinsured Motorist Provision of the policy.

App. at 93. USAA's letter, in other words, took the position that the policies provided "gap," not "excess," underinsured motorist coverage.[4] We subsequently held, however, in *North River Ins. Co. v. Tabor*, 934 F.2d 461 (3d Cir.1991), that the Pennsylvania Motor Vehicle Responsibility Law re-

quires "excess" underinsured motorist coverage and prohibits the sort of set-off that USAA's letter described.

Fisher's attorney responded to USAA in a letter dated June 23, 1987. This letter took the position that "excess" coverage was required and advised that "as soon as the case settles for the policy limits, I will be in touch." App. at 94. USAA's next correspondence, dated August 18, 1987, discussed the parties' disagreement regarding the nature of the underinsurance coverage.

On December 7, 1987, Fisher settled with the tortfeasors. App. at 82. On December 10, Fisher notified USAA in writing that "the tortfeasor action has been settled for the policy limits" and enclosed a copy of the release. App. at 96. Fisher demanded coverage up to the limits of the policies or, alternatively, arbitration of the issue.

This evidence shows that Fisher submitted a claim to USAA, or at least notified USAA of its impending claim, on May 28, 1987. Fisher also indicated that he was preparing to settle with the tortfeasor for a specific amount, which represented the tortfeasor's policy limits. This evidence leaves no room for doubt that USAA had enough information to be compelled by Pennsylvania law to exercise one of its options with regard to its right to require consent before paying the claim.

The offer Fisher mentioned in his first letter was set to expire eight days after the date of the letter. Had Fisher and the tortfeasor actually settled on that day, USAA might not have had sufficient time to investigate and decide on a course of action. In such a case, the insurer could defend against coverage based on the insured's failure to obtain its consent because it had neither exercised one of its options nor unduly delayed its decision. As it happened, however, Fisher and the tortfeasor did not settle until December, six months later. All the while, USAA and Fisher continued to correspond regarding

---

**4.** As we explained in *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464 (3d Cir.1991), under "gap" underinsured motorist coverage, the insured may recover up to the limit of the underinsured motorist coverage less any recovery from the tortfeasor. Under "excess" underinsured motorist coverage, the insured may recover up to the limit of the underinsured motorist coverage so long as the total recovery from all sources does not exceed the damages.

the claim. Therefore, USAA had sufficient time and information to exercise one of its options.

USAA's response of June 11 may only be interpreted as a denial of coverage. With full knowledge of the proposed (and eventually agreed-upon) settlement terms, USAA asserted that if settlement was reached under the terms contemplated it "would be unable to assist" Fisher. App. at 93. USAA asserted that its policy provided "gap" coverage, i.e., that any recovery from the tortfeasors would have to be offset against the underinsured motorist coverage. This meant that, unless the coverage from the tortfeasors was less than $300,000 (the total underinsured motorist coverage under Fisher's policies), Fisher could not recover any underinsured motorist benefits. Thus, since the proposed settlement was for one million dollars, the insured's position that the policies provided "gap" coverage was clearly the equivalent of a denial of coverage.

We therefore hold that USAA may not deny coverage to Fisher on the ground that Fisher failed to obtain USAA's consent to settle with the tortfeasor.

## V.

At oral argument, the parties addressed the question whether, in the event of a remand, this dispute should be submitted to arbitration or should remain before the district court. As noted earlier, when the dispute between Fisher and USAA first arose, Fisher demanded arbitration. The arbitration process commenced, but when USAA denied coverage on the ground that Fisher had failed to obtain USAA's consent to settle with the tortfeasor, Fisher filed the present action in federal court. Ruling that Fisher was not required to submit to arbitration, the court held that the arbitration clause did not extend to disputes as to coverage under the policy.

Since that time, however, we have clarified the meaning of an arbitration clause similar to that in question here. In *Nationwide Ins. Co. v. Patterson*, 953 F.2d

44, 46 (3d Cir.1991), the clause mandated arbitration when the parties " '[did] not agree about the insured's right to recover damages or the amount of damages'." In the wake of *Brennan v. Gen. Accident Fire & Life Assur. Corp.*, 524 Pa. 542, 574 A.2d 580 (1990), we held that this clause required arbitration " 'whenever the insured and the insurer disagree as to when a party is legally entitled to recover damages.' " *Nationwide*, 953 F.2d at 47, quoting *Brennan*, 574 A.2d at 583. *See McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 553 (3d Cir.1992).

The clause in the policy at issue here states, in language essentially similar to the relevant clauses at issue in *Nationwide* and *Brennan* [5]:

If [USAA] and a covered person do not agree:

1) Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or

2) As to the amount of damages;

either party may make a written demand for arbitration.... A decision agreed to by two of the [three] arbitrators will be binding.

In light of the new caselaw discussed above, the district court on remand should first consider whether any party now seeking to compel arbitration has waived that right. If no such waiver has occurred, the court should then consider whether the parties are subject to mandatory arbitration with respect to the remaining issues.

## VI.

We will reverse the district court's summary judgment in favor of USAA. We will remand to the district court for further proceedings consistent with this opinion.

---

5. *See Nationwide*, 953 F.2d at 46, 47 n. 2.