615 A.2d 779

Ethel ARCHER, Appellant,

v.

**STATE FARM INSURANCE COMPANY, & Pennsylvania Financial Responsibility Assigned Claims Plan & Liberty Mutual Insurance Co. & Lydia Merriweather, Appellees.**

Superior Court of Pennsylvania.

Submitted Aug. 3, 1992.

Filed Nov. 5, 1992.

Neil Leibman, Bala Cynwyd, for appellant.

Teresa F. Sachs, Philadelphia, for appellees.

Before OLSZEWSKI, MONTEMURO and CERCONE, JJ.

OLSZEWSKI, Judge:

Ethel Archer appeals the order entered December 17, 1991, in the Court of Common Pleas of Philadelphia County, granting State Farm Insurance Company's (State Farm's) motion for summary judgment. The underlying action arose out of an automobile accident which occurred in Philadelphia on July 8, 1987. We adopt the facts as set forth by the trial court:[1]

1. These facts are taken from the trial court opinion contained in the record. We caution appellant that the failure to append the trial court's opinion to her brief violates Pa.R.A.P., Rule 2111, 42 Pa.C.S.A. In addition, the Reproduced Record filed by appellant does not contain the complaint, answer, or the exhibits to the motion for summary judgment. Appellant nonetheless directs the attention of this Court to

Plaintiff [Archer] filed this action against Lydia Merriweather, Liberty Mutual Insurance Company, State Farm Insurance Company, and the Assigned Claims Plan of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1751–57 (Purdon Supp.1991), for injuries sustained in a motor vehicle accident caused by Merriweather. On July 8, 1987, Plaintiff was a passenger in an automobile insured by State Farm which was rear ended by a second automobile driven by Merriweather and insured by Liberty Mutual. Plaintiff seeks underinsured motorist benefits from State Farm because the Liberty Mutual policy limits on Merriweather's car are inadequate to cover Plaintiff's damages.[2] Judge D'Allessandro dismissed Plaintiff's Complaint against the Assigned Claims Plan after determining that the Plan is not a proper source of benefits where Plaintiff has other insurance policy benefits available to her. 75 Pa.C.S.A. § 1752(a)(6). On August 3, 1989, Plaintiff executed a release in favor of Defendants Liberty Mutual and its insured, Merriweather. Plaintiff, however, failed to notify State Farm of her intention to settle with these Defendants and, in fact, State Farm did not receive notice of the settlement until September 13, 1989. Equally important, State Farm's September 5, 1989 letter to Plaintiff reveals State Farm's belief that no release had been executed with Merriweather and State Farm's immediate concern that its subrogation rights be protected. State Farm never consented to the settlement. State Farm argues that summary judgment is proper here because its subrogation rights were destroyed when Plaintiff executed the release without the consent or knowledge of State Farm, and in

those pleadings, which include the insurance policy at issue, in support of her arguments. The failure to present this relevant material to the Court via appellant's reproduced record is a violation of Pa.R.A.P., Rule 2152, 42 Pa.C.S.A., Content and Effect of Reproduced Record, and Pa.R.A.P., Rule 2154, 42 Pa.C.S.A., Designation of Contents of Reproduced Record.

**2.** On appeal to this Court, Archer pursues underinsured motorist benefits. We note that although the amount of the settlement with Travelers is $50,000.00 (*see* Motion for Summary Judgment of Defendant State Farm Insurance Company, Exhibit C), there is no evidence on the record of the amount of Archer's claimed damages.

violation of the consent-to-settle clause under Endorsement 6895CC of the State Farm policy. Plaintiff argues that she did not execute a general release and because the language of the release explicitly reserves State Farm's subrogation rights, it is not entitled to summary judgment. The central issue before this Court is whether a genuine issue of material fact exists regarding the failure of Plaintiff to notify and receive the consent of State Farm prior to executing the release with Liberty Mutual and Merriweather. We conclude that no issue exists and State Farm is entitled to judgment as a matter of law. Pa.R.C.P. Rule 1035(b), 42 Pa.C.S.A. (Purdon 1987).

Trial court opinion, 3/10/92, at 1–3; R.R. at 3a–6a.

Archer presents six issues for our review:

Did the lower court fail to consider the fact that appellant preserved the appellee's subrogation rights in deciding appellees' motion for summary judgment?

Did the lower court consider the denial of liability by the appellee in making its decision?

Did the lower court fail to consider the equities of the case in making its decision on appellee's motion?

Did the lower court fail to consider the entire insurance policy in deciding the appellee's motion?

Did appellee fail to protect its subrogation interest by its failure to join the settling tortfeasor as an additional defendant?

Did the lower court incorrectly find that there were no factual issues?

Initially, we note that this Court will disturb the trial court's grant of summary judgment only where there has been a clear abuse of discretion or an error of law. *Brecher v. Cutler*, 396 Pa.Super. 211, 578 A.2d 481 (1990). The motion is properly granted where:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P., Rule 1035(b), 42 Pa.C.S.A. The moving party has the burden of proving the non-existence of any genuine issue of material fact. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). The court must view the record in the light most favorable to the non-moving party, resolving any doubts against the moving party as to the existence of genuine issues of material fact. *Id.* We find that the trial court's grant of summary judgment was proper.

Appellant first argues that her settlement with Liberty Mutual did not violate State Farm's protected rights under the consent to settle clause in their agreement, because she preserved State Farm's right of subrogation. Accordingly, her argument goes, the obligation of State Farm to provide coverage was not extinguished, and an issue of fact still exists concerning coverage. We disagree. Appellant's argument is apparently based upon the following passage in the "Release and Settlement of Claim" signed by Archer:

> [Archer] hereby releases and forever discharges LYDIA MERRIWEATHER, ROYCE MERRIWEATHER, AND LIBERTY MUTUAL INSURANCE COMPANY and all other persons, firms and corporations from all claims and demands, rights and causes of action of any kind the undersigned now has or hereafter may have on account of or in any way growing out of Personal Injuries existing or which may exist which are known or unknown to me at the present time and Property Damage resulting or to result from an occurrence which happened on or about July 8, 1987 ...

Typed into but apparently not part of the original settlement form is the phrase: "except for claims for underinsurance and first party benefits against Assigned Claims Plan and State Farm Insurance." *See* motion for summary judgment of defendant State Farm Insurance Company, 11/7/91, Exhibit C.

For our purposes, the relevant portion of the State Farm Insurance policy states:

OUR RIGHT TO RECOVER PAYMENT

A. If we make payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right.

> That person shall do: 1.) Whatever is necessary to enable us to exercise our rights; and 2.) Nothing after loss to prejudice them.

State Farm Insurance policy at 13. This contract provision intended to allow State Farm to pursue a cause of action on the insured's behalf, when State Farm had paid the insured benefits on a claim. This is known as the equitable right of subrogation. 35 P.L.E. § 1 (1961). In this case, Archer entered a settlement which released her claims against the Merriweathers and Liberty Mutual Insurance Company. Accordingly, only the Assigned Claims Plan and State Farm remained as potential defendants. State Farm, asserting claims on behalf of Archer, only had a claim against the Assigned Claims Plan. However, Archer's claim against the Assigned Claims Plan was extinguished when the Court of Common Pleas of Philadelphia County dismissed with prejudice Archer's complaint against the Plan. *See* order of Judge D'Allessandro, 8/30/89, unnumbered docket entry. State Farm's right to pursue recovery through Archer—the right of subrogation—was destroyed. Archer's attempt to preserve the rights of subrogation in the settlement and release form was completely ineffectual. More importantly, Archer pursued the settlement with Liberty Mutual without notifying State Farm. Archer's actions in this regard contravened the insurance policy, which stated:

> EXCLUSIONS:
> A. We do not provide Uninsured/Underinsured Motorist Coverage for bodily injury sustained by any person: ... 2. If that person or the legal representative settles the bodily injury claim without our consent.

State Farm Insurance policy at 9.

Although we have held that a claimant who consummates a settlement agreement without the written consent of the Assigned Claims Plan designee may not recover *uninsured* motorist benefits from the designee insurer, *Cotton v. Ins. Co. of North America*, 344 Pa.Super. 602, 497 A.2d 254 (1985), this Court has not yet addressed the availability of *underinsured* motorist benefits where the insured settles with a tortfeasor in

violation of a consent to settle clause in a private insurance policy. Our holding in *Cotton* was based upon the Uninsured Motorist Act, which stated in pertinent part:

(e) the coverage required by this section does not apply:

\*      \*      \*      \*      \*      \*

(2) to bodily injury sustained by the insured with respect to which the insured or his representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefore.

40 Pa.S. § 2000(e)(2) (repealed). In *Cotton*, we noted that the aim of § 2000(e)(2) was "to protect the subrogation rights of the [Assigned Claims Plan]." *Cotton*, 344 Pa.Super. at 603–04, 497 A.2d at 255.

More recently, we addressed the question of whether an Assigned Claims Plan designee insurer may deny first-party benefits on the basis of a consent to settle clause, where a claimant settles with the tortfeasor without the designee's consent. *Melendez v. Pennsylvania Assigned Claims Plan*, 384 Pa.Super. 48, 557 A.2d 767 (1989). In that case, plaintiff filed a complaint against Travelers Insurance Company, the designee of the Assigned Claims Plan, without notifying Travelers that she had executed a release in favor of the tortfeasor. Travelers' motion for summary judgment was granted because the court found that appellant's release of the tortfeasor extinguished Travelers' right to subrogation. Subrogation by the Assigned Claims Plan designee is authorized by the Pennsylvania Financial Responsibility Law:

the Assigned Claims Plan or its assignee is entitled to recover, in accordance with the tort liability law of this Commonwealth, reimbursement for benefits or coverage paid, loss adjustment costs and any other sums paid to an eligible claimant under this chapter.

75 Pa.C.S.A. § 1756.

In *Melendez*, we compared our reasoning concerning the Financial Responsibility Law with our rationale in *Cotton*, concerning the Assigned Claims Plan. We concluded that

although the language in the two acts was not identical, the purpose of these statutes was to protect the subrogation rights of the insurer. *Melendez,* 384 Pa.Super. at 50–52, 557 A.2d at 768. We went on to state that:

> [u]nder the relevant caselaw of this Commonwealth dealing with *both contractual and statutory insurance subrogation* issues, it is clear that where an injured party extinguishes an insurer's subrogation rights by settling and releasing an alleged tortfeasor, the injured party loses his right to recover from the insurer.

*Id.,* 384 Pa.Super. at 52, 557 A.2d at 769 (citations omitted) (emphasis supplied).

The rationale supporting these decisions is that when an insured nullifies an insurer's ability to enforce its subrogation rights, by settling with and releasing an alleged tortfeasor, the injured party is no longer entitled to recover from the insurer. *See Nagle v. Allstate Ins. Co.,* 358 Pa.Super. 82, 516 A.2d 1191 (1986); *Littlejohn v. Keystone Ins. Co.,* 353 Pa.Super. 63, 509 A.2d 334 (1986); *Bradford v. American Mut. Liab. Ins. Co.,* 213 Pa.Super. 8, 245 A.2d 478 (1968); *Demmery v. Nat'l Union Fire Ins. Co.,* 210 Pa.Super. 193, 232 A.2d 21 (1967). Significantly, the trial court based its decision in the instant case on our holdings in *Bradford* and *Demmery.* These decisions reflect the Commonwealth's public policy against double recovery. *See Rossi v. State Farm,* 318 Pa.Super. 386, 465 A.2d 8 (1983) (an injured party cannot recover twice for the same injury, based on the theory that double recovery results in unjust enrichment). Under the circumstances of this case, we can ascertain no prohibition against applying the same rationale to a private insurer's denial of underinsurance benefits pursuant to the parties' insurance contract.

We have addressed appellant's first issue within the contours of the Financial Responsibility Law and the former Uninsured Motorist Act because these laws, as incorporated in the case law relied upon by the trial court, formed the basis of the trial court's opinion. However, we find that our focus in this case lies more appropriately in an interpretation of the

parties' contract of insurance. Contract interpretation will therefore guide us in determining whether State Farm was entitled to summary judgment as a matter of law. When this Court is asked to review the meaning of a contract, the intent of the parties is paramount, and our goal is to ascertain the parties' intent as it is manifestly expressed in the agreement itself. *Warren v. Greenfield*, 407 Pa.Super. 600, 595 A.2d 1308 (1991) (citations omitted). When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982).

▪ The parties' insurance contract stated that coverage was excluded if the insurer's consent was not obtained before the insured settled with a tortfeasor. State Farm Insurance policy at 9. The insurance policy also specified that the insurer would be subrogated to the insured's right to recover damages from a tortfeasor. *Id.* at 13. Furthermore, the policy contained the following:

CONDITIONS

A. Action Against Company. No action shall lie against the company on the part of any eligible person unless such person has fully complied with all the terms of this coverage.

*Id.* at 21.

We find that the parties' intent as manifestly expressed in the insurance contract was clear. The insured was obligated to notify State Farm before settlement with the tortfeasor. In addition, the insured was obligated to do "whatever was necessary to enable [State Farm] to exercise their rights" in subrogation.

It is important to highlight that the language of the consent to settle clause in this case is very similar to the statutory language concerning subrogation which this Court has upheld in previous cases. As we noted, the Uninsured Motorist Act provided that "the coverage required by this section does not apply ... to bodily injury sustained by the insured [where] the insured or his representative shall, without the written

consent of the insurer, make any settlement with ... any person who may be legally liable therefore." 40 Pa.S. § 2000(e) (repealed). Similarly, the Financial Responsibility Law reserves the Assigned Claims Plan's "right to recover ... reimbursement for benefits or coverage paid, ... and any other sums paid to an eligible claimant." 75 Pa.C.S.A. § 1756. We find that the language utilized by State Farm in the insurance contract in this case had as its aim the same interests that are protected by the statutory language and in caselaw cited above. This fact, coupled with our rationale in *Melendez*,[3] compels our finding that the consent to settle clause in this case was breached and that summary judgment was proper. Appellant's first allegation of error is without merit.

Appellant's second allegation of trial court error is also meritless. Appellant claims that State Farm's preliminary objections were a denial of liability for the accident which, accordingly, created an issue of disputed fact. Appellant's reasoning on this point is less than clear. Regardless, we perceive appellant's tortured argument to be that State Farm's alleged denial of liability precluded it from relying upon the consent to settle clause in the insurance contract, and that summary judgment was inappropriate. This assertion of error is flatly contradicted by the record. State Farm's preliminary objections are in the form of a demurrer for: (1) failure to utilize the arbitration procedure mandated by the State Farm insurance policy held by Archer, and (2) a preliminary objection based on lack of capacity to sue, because the State Farm policy held by Archer required that any claim for underinsured motorist benefits was to proceed by arbitration. The focus of the demurrer is that Archer failed to utilize the arbitration procedure required for the resolution of disputed claims under the State Farm policy. State Farm's preliminary objections in the form of a demurrer were not a denial of

---

3. "Under the relevant caselaw of this Commonwealth dealing with both contractual and statutory insurance subrogation ... it is clear that where an injured party extinguishes an insurer's subrogation rights by settling and releasing an alleged tortfeasor, the injured party loses his

its liability, nor did they affect the clear terms of the insurance policy. We hold that they did not, as appellant argues, create a disputed issue of fact which should have precluded summary judgment.

Appellant's third allegation of error is that the trial court failed to consider the equities of this case when it granted the summary judgment motion. We have noted that subrogation is an equitable doctrine:

> the action for subrogation is one based on considerations of equity and good conscience. The goal is to place the burden of the debt upon the person who should bear it. The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable principles. It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated.

*Allstate Insurance Co. v. Clarke,* 364 Pa.Super. 196, 201, 527 A.2d 1021, 1023–24 (1987) (citations omitted). In support of the third argument, appellant cites authority in which courts have found it inequitable to allow an insurer to avoid financial responsibility where the insurer's right of subrogation was violated. These cases, however, do not control the instant case because they involve situations where the insurer was apprised of settlement proceedings before settlement occurred, and thereafter denied coverage. *See Roberts v. Fireman's Ins. Co.,* 376 Pa. 99, 101 A.2d 747 (1954); *Daley–Sand v. West American Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965 (1989). In the case at bar, State Farm was never made aware of settlement negotiations and never had an opportunity to preserve its contractual right of subrogation. There is no evidence that the trial court failed to consider the equities in this case. Appellant's third allegation of trial court error fails.

Appellant's fourth assertion of error is that the trial court failed to consider the entire insurance policy when it granted summary judgment. In support of this argument, appellant quotes from the State Farm policy as follows:

> right to recover from the insurer." *Melendez,* 384 Pa.Super. at 52, 557 A.2d at 769.

> We do not provide Uninsured/Underinsured Motorist Coverage for bodily injury sustained by any person: ... 2. If that person or the legal representative settles the bodily injury claim without our consent

State Farm Insurance policy at 9.

> If we make payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do: *1. Whatever is necessary to enable us to exercise our rights; and 2. Nothing after loss to prejudice them.*

*Id.* at 13. Appellant claims that the insurance contract with State Farm was not breached because appellant did what was necessary to preserve State Farm's rights of subrogation. We disagree. State Farm had no notice of the settlement or ongoing settlement negotiations through which it could have preserved its contractual right of subrogation. Upon examination of the policy terms, it is clear that the contract was breached. As we stated above, the typewritten addendum to the settlement was an attempt to preserve Archer's claim against the Assigned Claims Plan. Archer's complaint against the Plan was dismissed. State Farm's right of subrogation was extinguished. Accordingly, we find that appellant's fourth contention of error is meritless.

 As a fifth assertion of error, neither presented to nor addressed by the trial court, appellant claims that State Farm should have named Merriweather as an additional defendant in this case, in order to protect its subrogation rights. Appellant's argument implicitly asks this Court to grant relief, despite that State Farm's inability to sue was a direct result of Archer's unilateral settlement with Liberty Mutual and its insured tortfeasor. We remind appellant that a party to a contract may not complain of a breach caused by her own default. *Kolbe v. Aegis Ins. Co.*, 370 Pa.Super. 539, 537 A.2d 7 (1988). As provided for under the State Farm policy, State Farm as the subrogee would have had the same rights as Archer. However, as we have explained in detail above, State Farm's rights of subrogation against all parties except the

Assigned Claims Plan were extinguished in the release executed by Archer in favor of Merriweather and Liberty Mutual. Therefore, we find that appellant's fifth contention of error is completely without merit.

Appellant's sixth and final allegation of error is that the trial court incorrectly found that there were no factual issues. We find it unnecessary to address this as a separate issue, because the propriety of summary judgment has been thoroughly demonstrated in the preceding discussion.

Finding no error in the trial court's disposition of this case, the order granting State Farm's motion for summary judgment is affirmed. Jurisdiction is relinquished.

CERCONE, J., concurs in the result.