**Hockenberry v. Horace Mann Insurance Company**

*James J. Kayer,* for plaintiff.
*Charles D. Calkins,* for defendant.

BAYLEY, J., June 23, 1993—This is a motion for summary judgment by defendant, Horace Mann Insurance Company, against plaintiff, Linda Hockenberry. Plaintiff was a passenger in an automobile operated by her husband on June 10, 1989, that was involved in an accident with a vehicle operated by Arlene Hester. Plaintiff instituted a suit against Hester, and on July 9, 1990, she executed a general release settling all claims she had against Hester for her liability policy limit of $25,000. Prior to the settlement plaintiff neither sought underinsurance benefits from defendant nor sought or received a consent to enter into this settlement by her underinsurance motorist carrier, defendant herein.

Plaintiff maintains that prior to making the settlement her attorney commenced an asset check of Hester which confirmed that she had no assets to pursue if a judgment had been obtained against her. Following the settlement, plaintiff sought underinsurance benefits from defendant which were denied. Plaintiff then instituted this lawsuit on January 17, 1991, seeking benefits under the under-

insurance provision of the policy issued by defendant for damages she claims are recoverable from the accident on June 10, 1989, in excess of the $25,000 settlement she made with Hester. Defendant has denied the claim based on what it maintains is a breach of the following provision in its insurance contract with plaintiff:

"Section 3—Uninsured/Underinsured Motor Vehicle Coverage J.

*"We do not provide* uninsured/*underinsured motorist coverage for bodily injury sustained by any person:*

*"1. If that person* or the legal representative *settles the bodily injury claim without our consent...."* (emphasis added)

Plaintiff maintains that since she settled for the tortfeasor's insurance limit, and an assets check revealed that the tortfeasor had no assets to pursue if a judgment had been obtained, defendant was not prejudiced by its not being notified of the settlement in a timely fashion. Thus, plaintiff argues that summary judgment should not be granted. Under Pennsylvania Rule of Civil Procedure 1035, a summary judgment may only be granted where there are no genuine issues of material fact and the moving party is entitled to the judgment as a matter of law. The moving party has the burden of proving the non-existence of any genuine issue of material fact. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991).

In *Archer v. State Farm Insurance Co.,* 419 Pa. Super. 558, 615 A.2d 779 (1992), plaintiff filed an action seeking underinsured motorist benefits. She had previously entered

into a settlement with the tortfeasor and the tortfeasor's insurance carrier for $50,000.[1] She did not notify her underinsurance motorist carrier of her intention to settle and entered into the settlement without obtaining the carrier's consent. The carrier filed for summary judgment claiming: "[i]ts subrogation rights were destroyed when plaintiff executed the release without the consent or knowledge of State Farm, and in violation of the consent-to-settle clause ... of [its] policy." *Archer, supra* at 560-61, 615 A.2d at 781. The insurance policy had a provision that if the company made "payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right." In rejecting all of Archer's arguments that summary judgment should not have been granted by the trial court, the Superior Court noted:

"The parties' insurance contract stated that coverage was excluded if the insurer's consent was not obtained before the insured settled with a tortfeasor.... *The insurance policy also specified that the insurer would be subrogated to the insured's right to recover damages from a tortfeasor.*" (emphasis added) *Id.* at 566, 615 A.2d at 783-84.

Citing *Melendez v. Pennsylvania Assigned Claims Plan,* 384 Pa. Super. 48, 557 A.2d 767 (1989), the Superior Court in *Archer* noted:

"When an insured nullifies an insurer's ability to enforce its subrogation rights, by settling with and releasing an

---

1. There is no indication in the opinion if the $50,000 settlement was for insurance limits.

alleged tortfeasor, *the injured party is no longer entitled to recover from the insurer.*" (emphasis added) *Id.* at 565, 615 A.2d at 783.

In *Fisher v. USAA Casualty Insurance Company,* 973 F.2d 1103 (3rd Cir. 1992), the U.S. District Court for the Eastern District of Pennsylvania, had held that the settlement of a claim against tortfeasors for insurance limits, without the consent of the underinsurance motor carrier, denied the carrier any rights under a subrogation clause in USAA's policy; therefore, it granted summary judgment to the carrier. The court of appeals reversed because, on the facts, they found that the underinsurance carrier had denied the coverage before plaintiff had settled with the tortfeasors. However, the court predicted that the Supreme Court of Pennsylvania would follow *Melendez v. Pennsylvania Assigned Claim Plans, supra,* and *Dyer v. Travelers,* 392 Pa. Super. 202, 572 A.2d 762 (1990), and hold that consent-to-settle clauses are enforceable.[2] The court then stated:

"Fisher also argues that USAA could not invoke the consent-to-settle clause because it was not prejudiced by the settlement.

"Two district court decisions support Fisher's argument. In *Prudential Property & Casualty Insurance Co. v. Nayerahamadi,* 593 F. Supp. 216, 218 (E.D. Pa. 1984), the court denied the summary judgment motion of an insurer that relied on a consent-to-settle clause since the

---

2. They have been held unenforceable in several jurisdictions. See cases cited in footnote 1 in *Fisher.*

court could not determine whether the settlement was reasonable.

"The court wrote:

"An insurance company has a duty to consent to a reasonable settlement. ... [The insurer must] demonstrate some prejudice to it resulting from the defendant's failure to obtain [the insurer's] consent to the settlement.... If [the settlement] were reasonable, [the insurer] could not have withheld consent to the settlement, and thus would not have been prejudiced by [the insured's] failure to obtain prior approval of the settlement. If there was no harm done to [the insurer], the consent-to-settle clause should not block [the insured's] recovery of benefits under the policy.

In *Wheeler v. Nationwide Mutual Insurance Co.,* 749 F. Supp. 660 (E.D. Pa. 1990), the court denied an insurer's summary judgment motion on similar grounds. The court observed that the settlement the insured had reached with the tortfeasor appeared to be reasonable and that the insurer had not explained how the release executed by the insured had prejudiced the insurer. The court continued: '[The insurer did] not specify the terms or conditions of the release, and [did] not indicate how solvent the under-insured motorist is.... [W]hether [the insurer] was prejudiced [was] still a genuine issue of material fact....' *Wheeler,* 749 F. Supp. at 663.

Under these cases, if a settlement is reasonable and not prejudicial to the insurer, the insured's failure to seek consent is irrelevant. We are not persuaded, however, that

the Pennsylvania Supreme Court would adopt this rule. Neither *Nayerahamadi* nor *Wheeler* cited any Pennsylvania authority that supports this rule, and it does not appear that any Pennsylvania state court decision has explicitly required any showing of prejudice before enforcing a consent-to-settle clause. In both *Melendez* and *Dyer,* the mere fact that the insured destroyed the possibility of subrogation without the consent of the insurer was held to be sufficient to preclude recovery under the policy. In neither case did the court determine the financial condition of the tortfeasor or otherwise consider the practicalities of subrogation in determining that the insured could not recover under the policy. On the contrary, *Dyer* suggests that merely by proceeding against the tortfeasor the insured harms the interests of the insurer in such a way so as to constitute prejudice:

" 'As [the insurer] correctly argued in its appellate brief, "... in any litigation the parties involved are presented with choices at every stage of the proceedings. Strategy and efforts at compromise pervade ... the case. The degree of ... diligence and competence with which a case is handled often means the difference between great success and utter failure." Under the [Financial Responsibility Act] the statutory right of subrogation includes the right to decide how to proceed against a tortfeasor in order to best preserve the funds in the Assigned Claims Plan.'

"In the instant case, [the insured] proceeded without consent of [the insurer] and [the insurer] was therefore not in a position to assert [the insured's] rights. [The

insurer] had no control over any aspect of the proceedings which resulted in the arbitration award. Appellant so prejudiced [the insurer's] right to subrogation as to extinguish it. *Dyer,* 572 A.2d at 764." (Original footnote[2]. "In *Dyer,* the subrogation right was provided by statute to the insurer as a designee of the Assigned Claims Plan. 75 Pa.C.S. §1756 (1991). In this case, subrogation is provided by the terms of the policy. Nevertheless, the need for protection of the subrogation right remains the same.")

"We predict that the Pennsylvania Supreme Court would not follow the rule applied in *Nayerahamadi* and *Wheeler.* We therefore do not apply that rule here." (Original footnote[3]. "If, however, the Pennsylvania courts were to adopt such a rule, we believe that they would place upon the insured the burden of proving that a settlement was reasonable and not prejudicial to the interests of the insurer. As between the insured and the insurer, it is the insured who possesses more information relevant to these questions—e.g., information about the strength of the insured's case against the tortfeasor, the insured's damages, the terms of any insurance coverage possessed by the tortfeasor, existence of other assets owned by the tortfeasor, etc. Thus, the insured is in the best position to offer such proof at trial.")

For the reasons set forth by the court of appeals in *Fisher,* and in light of the Superior Court's subsequent decision in *Archer,* we conclude there is no merit in plaintiff's general claim that there was no prejudice to defendant, based solely on the settlement for insurance limits

and the asset check, that would insulate her from not having complied with the consent to settle clause. However, unlike *Archer* and *Fisher,* the insurance policy in the case sub judice, not only *does not* contain a subrogation clause, it provides:

"*We* will pay under this coverage arising out of an accident with an *underinsured motor vehicle only after the limits of liability under any applicable* bodily injury liability bonds or *policies have been exhausted by* payments of judgments or *settlements.* (emphasis added)[3]

Under this clause, even if defendant had a right to subrogation, it makes no difference because the $25,000 limit of the tortfeasor's insurance was exhausted by the settlement on July 9, 1990. Accordingly, as of the time of that settlement, under the above clause, defendant became contractually liable to pay plaintiff, subject to the limits of its underinsurance coverage, for damages arising from the accident of June 10, 1989, in excess of the $25,000. Whether Hester has any assets is not relevant. Under Pennsylvania law, only a *material* failure of performance of a contractual provision by one party discharges the other party. *Sgarlat v. Griffith,* 349 Pa. 42, 36 A.2d 330 (1944). Since policy limits were obtained from the tortfeasor, the failure of plaintiff to obtain the consent of defendant to settle in violation of section 3

---

3. Only part of the policy is in the record. Since defendant has not cited any contractual right to subrogation in the policy, we cannot assume there is one. Nor has defendant cited any statutory right to subrogation.

of the underinsurance motorist provision was not a material breach of the insurance contract because by the terms of its policy, defendant agreed to pay any underinsurance benefits due once the tortfeasor's policy limits were exhausted. Thus, defendant did not have any subrogation rights nullified by the settlement. The legal premise which formed the basis for the holding in *Archer,* i.e., the nullification of the insurer's ability to enforce its subrogation rights, is not applicable to the insurance contract in this case. Thus, defendant is not entitled to summary judgment as a matter of law.[4]

## ORDER

And now, June 23, 1993, the motion of defendant for summary judgment, is denied.

---

4. As a matter of judicial economy we will comment on the additional claims in plaintiff's complaint seeking compensatory and punitive damages for the alleged bad faith of defendant in denying the claim for underinsurance benefits. Defendant's reliance on the consent-to-settle clause in the policy, and on *Archer v. State Farm Insurance Co., supra,* is hardly bad faith. Plaintiff's counsel did not even cite and attempt to distinguish *Archer* in his brief. He did not recognize or brief the issue involving the clause in the policy upon which we, after examining the insurance documents in the record, concluded that summary judgment should not be granted. It is plaintiff's attorney who jeopardized his client's underinsurance benefits by not seeking defendant's consent to settle with the tortfeasor. If the consent had been unreasonably withheld there would have been a remedy. See *Daley-Sand v. West American Insurance Co.,* 387 Pa. Super. 630 564 A.2d 965 (1989). To attempt to turn this case into a bad faith claim is patently frivolous.