500 A.2d 169

**Patrick J. ALFIERO**

**v.**

**BERKS MUTUAL LEASING CO. and International Harvester Co. and CNA Insurance Company a/k/a and/or d/b/a Continental Casualty Company.**

**Appeal of CNA INSURANCE COMPANY a/k/a and/or d/b/a Continental Casualty Company.**

Superior Court of Pennsylvania.

Argued March 18, 1985.

Filed Nov. 1, 1985.

Stephen C. Baker, Philadelphia, for appellant.

Paul R. Anapol, Philadelphia, for Alfiero, appellee.

Thomas J. Finarelli, Philadelphia, for International, appellee.

Before WIEAND, WATKINS and GEISZ,[*] JJ.

WIEAND, Judge:

Patrick J. Alfiero sustained a spinal cord injury resulting in complete and permanent paraplegia by virtue of an accident which occurred while he was driving a dump truck leased to his employer, Empire Steel Castings, Inc., by Berks Mutual Leasing Company (hereinafter "Berks"). Alfiero commenced a civil action against Berks and International Harvester Company, Inc., the designer and manufacturer of the truck. An amicable settlement resulted in a judgment in favor of Alfiero and against Berks in the amount of $950,000.00.[1] Berks' primary insurance carrier, Liberty Mutual Insurance Co., paid Alfiero the sum of $100,000.00, its policy limit. Excess coverage was allegedly provided by a policy of insurance written by Continental Casualty Company (hereinafter "CNA"). Alfiero issued execution on the unpaid judgment of $850,000.00 and named CNA as garnishee. CNA denied liability, but the trial

---

[*] The Honorable John A. Geisz, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. The claim against International Harvester was settled for an amount contingent upon the amount that could be recovered from Berks and its several insurance carriers.

court, after full and complete hearing, made extensive findings of fact and concluded that CNA was liable for the unpaid judgment and also for Alfiero's counsel fees. On appeal, CNA contends (1) that the terms of the settlement between Alfiero and Berks were such that Berks, and thus its excess liability carrier as well, was released from all liability in excess of $100,000.00, and (2) that the trial court erred in assessing Alfiero's counsel fees against a garnishee. There is merit only in the second contention.

The trial court made extensive findings of fact which are not challenged on appeal. The truck which Alfiero was driving for his employer at the time of the accident had been leased from Berks pursuant to a lease agreement which required Empire Steel to provide liability insurance coverage. Berks was required to maintain the truck. Berks was insured by Liberty Mutual pursuant to a garage liability policy which had limits of $100,000.00 per person for bodily injury. Empire Steel had purchased from CNA a third party liability policy which, although disputed, was held in a separate declaratory judgment action to provide umbrella or excess coverage to Berks in an amount not to exceed $1,000,000.00.[2]

Timely notice of Alfiero's civil action was given to CNA together with a request by Berks to defend the action. CNA refused, and Liberty Mutual undertook to defend the action on Berks' behalf. CNA continued its refusal to defend even after the trial court had determined in the separate declaratory judgment proceeding that CNA had a duty to defend. Instead, CNA filed an appeal and, in the meantime, refused to participate in the civil action or in the settlement discussions which were then underway. According to the findings of the attachment court, trial counsel for all parties were unanimous in their opinion that the Alfiero claim had a value in excess of one million dollars. For this reason and also because of a likelihood that Berks would be

2. The judgment was affirmed by the Superior Court *sub nom. Berks Mutual Leasing Co. v. Empire Steel,* 295 Pa.Super. 565, 437 A.2d 1015 (1981), and allocatur was denied by the Supreme Court.

found solely liable to Alfiero, CNA was repeatedly urged to take an active part in the settlement negotiations. CNA refused. It continued its refusal even after International Harvester had settled and counsel for Liberty Mutual had advised CNA that attempts were being made to settle for an amount under one million dollars. Ultimately, the claim against Berks was settled for $950,000.00. Liberty Mutual paid $100,000.00, as we have observed, and Berks assigned to Alfiero all its rights against CNA. In return, Alfiero agreed that he would not expose Berks' assets to sale to satisfy the balance of his judgment. The settlement was approved, and the amount was reduced to judgment. Execution proceedings were then begun by Alfiero against CNA.

CNA argues that because Alfiero agreed not to seek satisfaction from Berks' assets, Alfiero has effectively released Berks from any further liability to pay the judgment. Because Berks has no further liability to Alfiero, CNA contends, its duty to indemnify Berks has been extinguished. We reject this argument.

■ Alfiero did not agree to release Berks from further liability. Its agreement was to seek recovery of an agreed debt from a specific asset, i.e., the contractual rights owed to Berks by CNA. These contractual rights had been separately litigated, and a final judgment had been entered in separate declaratory judgment proceedings. The judgment, therefore, could be enforced by garnishment. *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 563 (3d Cir.1976) (a verdict winner can assert in a garnishment proceeding the insured's claim against the insurer as an assignee of the insured). See: *Shaw v. Botens*, 403 F.2d 150, 154–155 (3d Cir.1968); *Boyd Estate*, 394 Pa. 225, 242–243, 146 A.2d 816, 824–825 (1958). See also: *West v. MacMillan*, 301 Pa. 344, 152 A. 104 (1930); *Malley v. American Indemnity Co.*, 297 Pa. 216, 146 A. 571 (1929); *Shearer v. Reed*, 286 Pa.Super. 188, 428 A.2d 635 (1981).

■ The trial court determined that CNA's denial of coverage had been a breach of its contract of insurance. It concluded, therefore, that Berks could properly negotiate a settlement in an amount that was fair and reasonable and according to terms calculated to protect and preserve the physical assets which were essential to its ability to continue doing business. We agree. An insurer owes an insured the duty of acting in good faith. See: *Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 223 A.2d 8 (1966); *Shearer v. Reed, supra.* CNA repeatedly denied any and all obligation to defend or to indemnify Berks. CNA thereby breached its duty to act in good faith and repudiated its contract of insurance. See: Restatement (Second) of Contracts § 250 (1979); 49 A.L.R.2d 694, § 7, at 711–716 (1956). Under these circumstances Berks could properly negotiate a settlement directly with Alfiero so long as it was done in good faith and the settlement was fair and reasonable. The settlement was not unreasonable merely because Berks sought to protect the assets which it used in conducting business. See: *Massachusetts Bonding and Insurance Co. v. Car and General Insurance Corp.*, 152 F.Supp. 477, 480 (E.D.Pa.1957); *Murphy & Co. v. Manufacturers' Casualty Co.*, 89 Pa.Super. 281, 286 (1926). See also: *Traders & General Insurance Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621, 626 (10th Cir.1942).

■ The amount of Berks' liability to Alfiero was established by agreement and reduced to judgment. The court, in approving the settlement, found that the amount was reasonable, and CNA has not contended otherwise. CNA's liability for excess coverage had been established in prior proceedings. Therefore, the trial court could properly hold, as it did, that Alfiero could recover $850,000.00, the unsatisfied portion of the verdict, from CNA.

CNA's reliance on *United States Fire Insurance Co. v. Lay*, 577 F.2d 421 (7th Cir.1978) is misplaced. There, the primary carrier had settled for an amount less than its policy limit, but had obtained credit for the maximum coverage by agreement. Here, Liberty paid its policy limit in

full. Moreover, in *Lay*, the insured had obtained a release except as to available insurance coverage. Here, although Berks obtained an agreement that protected its assets, it did not do so until after CNA had repudiated its contract to provide excess insurance coverage. When that happened, Berks could properly negotiate a settlement according to terms intended to preserve its assets from execution. Although in *Lay*, there was an apparent attempt to benefit the insured improperly at the expense of the insurer, no such attempt appears in this case. Here, the parties have never attempted to do anything more than have CNA assume the duties legally owed to its insured according to its contract of insurance.

■ The trial court did not find that CNA had been guilty of "dilatory, obdurate, and vexatious conduct" and did not base an award of counsel fees upon authority contained in 42 Pa.C.S. § 2503. Instead, it based an award of counsel fees on "applicable Pennsylvania Rules of Civil Procedure governing the Enforcement of Money Judgments." Neither counsel's research nor our own has disclosed a rule of law which automatically imposes a duty to pay counsel fees upon a garnishee. Pa.R.C.P. 3117(b), upon which appellee appears to rely, applies only to the cost of discovering assets not disclosed by a garnishee. Moreover, the costs of discovering assets "may be taxed only against the judgment debtor; it is he who is liable for satisfaction of the judgment and it is he who is assumed to have wilfully refused to submit his property to execution." Goodrich-Amram 2d § 3117(b):1.1. In this case, moreover, the trial court acted sua sponte. Without any request therefor and without evidence to support a claim, the trial court awarded counsel fees "upon submission of appropriate proof." This was unwarranted and improper.

Except for the award of counsel fees, which is vacated and set aside, the order entering judgment against the garnishee is affirmed.