# Resource America Inc. v.
# Certain Underwriting Members of Lloyd's
# Subscribing to Policy No. \*\*\*/\*\*\*\*\*\*\*\*

*Steven A. Arbittier,* for plaintiffs.
*Jonathan Dryer* and *Patrick K. Cary,* for defendants.

SHEPPARD JR., *J.,* November 12, 2004—Before the court are cross-motions for summary judgment on the issue of whether defendant,[1] the excess liability insurer

---

1. The defendant is properly known as David Preston Mann, individually and as representative of Those Underwriters at Lloyd's, London, Subscribing to Directors and Officers Liability and Company Reimbursement Policy no. ***/********, which the court will refer to as "Lloyd's."

of the directors and officers of Resource America Inc. (RAI), must contribute $2,000,000 to a settlement entered into between RAI and a class of plaintiffs that had sued RAI for securities fraud based on alleged improper accounting practices.

The settlement resulted from a mediation between the parties in the underlying class action, which mediation was attended by a representative of Lloyd's. The mediator, over Lloyd's objection, recommended that the parties settle the underlying class action for $7,000,000. When Lloyd's refused to participate in the settlement, RAI and the class plaintiffs entered into an alternative, two-tiered, settlement pursuant to which RAI is obligated to pay the class plaintiffs $7 million if RAI is able to obtain coverage of $2 million from Lloyd's. But, if this court finds that Lloyd's does not have to provide coverage to RAI, then RAI is obligated to pay the class plaintiffs a total of only $6 million (the two-tiered settlement). See complaint, exhibit D.

Lloyd's is RAI's second excess directors and officers (D&O) insurer. Admiral Insurance Company issued RAI a primary D&O policy with coverage of $3 million (the Admiral policy). *Id.,* exhibit A. National Union Fire Insurance Company issued RAI's first excess D&O policy with coverage of an additional $3 million. *Id.,* exhibit B. Once those policies are exhausted, the Lloyd's second excess D&O policy provides an additional $4 million in

The individual plaintiffs are all officers and/or directors of the corporate plaintiff, Resource America Inc., all of whom were defendants in the underlying class action litigation brought in the United States District Court for the Eastern District of Pennsylvania, no. 98-CV-5446 (the underlying class action). The court will refer to all the plaintiffs, collectively, as "RAI" throughout this opinion.

coverage to RAI (the Lloyd's excess policy). Thus, RAI had a total of $10 million in D&O coverage. *Id.,* exhibit C.

In the underlying litigation, approximately $1 million of the Admiral policy coverage was used to pay for legal fees. As a result, Admiral and National Union contributed approximately $5 million to the two-tiered settlement. RAI now seeks the remaining $2 million from Lloyd's. However, Lloyd's denies that it is liable to pay anything.

## I. *The Applicable Terms of the Lloyd's Excess Policy*

The Lloyd's excess policy provides that it is "subject to the same insuring clauses, definitions, terms, conditions, exclusions and other provisions, as those set forth in the [Admiral] policy." Under the Admiral policy, "Loss" is defined to include "settlements," but "only those settlements . . . which have been consented to by the insurer shall be recoverable as loss under the terms of this policy." Defendants' motion for summary judgment, exhibit C, §§III.I, VI.B.[2] Furthermore, "the insureds shall not . . . enter into any settlement . . . without the prior written consent of the insurer." *Id.* at §VI.B.

---

2. The Admiral policy also contains a "No action clause" which provides that:

"No action shall lie against the insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of the policy; nor until the amount of the insureds' obligation to pay shall have been finally determined either by judgment against the insureds after actual trial or by written agreement of the insureds, the claimant and the insurer." *Id.* at §VIII.B.

"The insurer's consent shall not be unreasonably withheld, provided that the insurer shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent and shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim." *Id.*

RAI claims that Lloyd's breached the first clause of the quoted sentence which ends prior to the words "provided that" (the consent to settlement provision), by refusing to agree to the mediator's suggested settlement. Consequently, argues RAI, Lloyd's is obliged to pay the full $2 million towards the settlement. Lloyd's contends that RAI breached the second half of the quoted sentence, which begins with the words "provided that" (the duty to cooperate provision), and that Lloyd's does not have to pay anything. The question for this court is whether it can hold, as a matter of law, that either party breached the Lloyd's excess policy's terms.

## II. *Lloyd's Has Not Proffered Sufficient Evidence To Sustain Its Burden of Showing That RAI Breached the Duty to Cooperate*

Lloyd's argues that they are entitled to summary judgment because RAI breached the duty to cooperate in four specific ways, by:

"(1) Failing to provide Lloyd's with a settlement recommendation and a basis for that recommendation three weeks prior to mediation as requested by Lloyd's;

"(2) Bidding against itself and raising its offer from $1 million to $2 million without receiving any counteroffer from the plaintiff class; and

"(3) Requesting, over Lloyd's objection, that the mediator make his settlement recommendation public; and

"(4) Entering into a settlement that was different from the settlement that it proposed to Lloyd's after the mediation." Defendants' motion for summary judgment, ¶¶5-18.

In order to show that the insured breached the duty to cooperate, "the insurer must show that the breach is something more than a mere technical departure from the letter of the [policy. Instead, the insurer must show that the breach] is a [material variance] that results in a substantial prejudice and injury to [the insurer's] position in the matter." *Conroy v. Commercial Casualty Insurance Co.,* 292 Pa. 219, 224, 140 A. 905, 907 (1928); *Paxton National Insurance Co. v. Brickajlik,* 513 Pa. 627, 630, 522 A.2d 531, 532 (1987) (same). See *Forest City Grant Liberty Associates v. Genro II Inc.,* 438 Pa. Super. 553, 559, 652 A.2d 948, 951 (1995) ("a failure to cooperate must be substantial and will only serve as a defense where the insurer has suffered prejudice because of the breach."); *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 902 (3d Cir. 1987) ("[C]ourts have required a showing not only of the loss of substantial defense opportunities, but also of a likelihood of success in defending liability or damages . . . [which] makes particular sense in cases involving excess coverage because excess carriers generally have no right to control a lawsuit and because notice to the primary carrier generally ensures a competent and intelligent defense."). See also, *Cameron v. Berger,* 336 Pa. 229, 7 A.2d 293 (1939) (insured who disappeared and was thereby unavailable as a witness at trial breached its duty to cooperate); *Metal*

*Bank of America Inc. v. Insurance Co. of North America,* 360 Pa. Super. 350, 520 A.2d 493 (1987) (insured prejudiced its insurers' interests by defending action for two years to the point of settlement before notifying them of claim). In addition, the insured's "lack of good faith must be proved" by the insurer. *Conroy,* 292 Pa. at 226, 140 A. at 908.

"[W]here an insurer seeks to avoid liability for lack of coöperation, the question whether there has been a material breach . . . is ordinarily for the jury." *Cameron,* 336 Pa. at 235, 7 A.2d at 296 (court found for insurer as a matter of law because the evidence of lack of cooperation was conclusive). See also, *Donaldson v. Farm Bureau Mutual Automobile Insurance Co.,* 339 Pa. 106, 108, 14 A.2d 117, 118 (1940) ("[t]he question of lack of coöperation is ordinarily for the jury, especially when, as here, a finding of [the insured's] improper intent is necessary in order for the [insurer] to establish such a defense."); *Forest City,* 438 Pa. Super. at 559, 652 A.2d at 951 ("[w]hether there has been a material breach of an insured's duty to cooperate is a question for the finder of fact."). However, where as here, the insurer has not put forth sufficient evidence to sustain its burden to demonstrate that the insured's alleged acts of non-cooperation were material and prejudicial to the insurer, the court may grant summary judgment for the insured on the insurer's defense of non-cooperation.

Lloyd's has not offered sufficient evidence to substantiate its claim that RAI failed to cooperate with Lloyd's and thereby prejudiced Lloyd's. Specifically, while Lloyd's is technically correct that RAI did not provide Lloyd's with a settlement recommendation and a basis

for that recommendation three weeks prior to mediation (as requested by Lloyd's), the evidence shows that RAI did on numerous occasions from December 2000 through October 2001, provide Lloyd's with defense counsel's analysis of the strength of plaintiffs' claims and the strength (and weakness) of RAI's defenses, the amount of damages claimed, the plaintiffs' current settlement demand, and counsel's recommendation as to settlement amount. See plaintiffs' motion for summary judgment, exhibits 14-18, 21-22, 27. Furthermore, Lloyd's was invited to, and did, send a representative to attend the mediation that produced the settlement at issue. It is submitted that Lloyd's cannot seriously claim that RAI failed to keep Lloyd's informed on how the underlying class action and the possible settlement of it were progressing. See *Ardrey v. Keystone Insurance Co.,* 29 D.&C.4th 342, 348 (Dauphin Cty. 1995) ("[A]dequate notice includes 'either a demand for consent or a claim and sufficient information regarding the proposed settlement.' "), citing *Fisher v. USAA Casualty Insurance Co.,* 973 F.2d 1103, 1107 (3d Cir. 1992). See also, *Archer v. State Farm Insurance Co.,* 419 Pa. Super. 558, 566, 615 A.2d 779, 784 (1992) (Under the terms of a "no action clause," "[t]he insured was obligated to notify [the insurer] before settlement with the tort-feasor.").

The fact that RAI bid against itself and that RAI requested, over Lloyd's objection, that the mediator make his settlement recommendation public, do not demonstrate lack of cooperation by RAI. Instead, they show, at most, a disagreement between RAI and Lloyd's as to what methodology to employ to settle the case. Since the conduct of settlement negotiations is an art rather than a sci-

ence, Lloyd's cannot show that RAI's choice of alternative tactics resulted in prejudice to Lloyd's.

Furthermore, Lloyd's objection that RAI entered into a different settlement after Lloyd's refused to participate in the settlement proposed by the mediator, is without merit. It is only because of Lloyd's own recalcitrance that RAI and the class plaintiffs were compelled to agree to the two-tiered settlement. Lloyd's should not in good faith be permitted to complain about it. See *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 901 (3d Cir. 1987) ("Once the insurer had repudiated its contract of insurance, its insured must be allowed to negotiate a settlement that protected the interests for which it purchased insurance . . . *[e.g.]* the threat that [the plaintiffs' claims] would put it out of business."). Furthermore, since Lloyd's would have paid the same amount under the mediator's proposed settlement and under the two-tiered settlement, it cannot claim to have been prejudiced by any change in settlement terms.

In summary, then, this court will deny that aspect of Lloyd's motion for summary judgment which claims that RAI breached its duty to cooperate.

### III. *Lloyd's Has Failed To Show That the Settlement Was Unreasonable*

RAI seeks summary judgment on the ground that Lloyd's unreasonably refused to consent to the settlement proposed by the mediator. Even if the policy does not expressly so state,[3] an insurer that withholds its con-

---

3. In this case, the policy says that consent to the settlement "shall not be unreasonably withheld," which Lloyd's argues is a different

sent to settle must show that it did so in good faith, fairly, and reasonably. See *e.g., Daley-Sand v. West American Insurance Co.,* 387 Pa. Super. 630, 564 A.2d 965 (1989) (underinsured motorist coverage); *Alfiero v. Berks Mutual Leasing Co.,* 347 Pa. Super. 86, 500 A.2d 169 (1985) (excess liability insurance). Where an insurer "unreasonably refus[es] to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured." *Birth Center v. St. Paul Companies Inc.,* 567 Pa. 386, 408, 787 A.2d 376, 389 (2001).

In order to show that its consent was reasonably withheld, Lloyd's must show that the proffered settlement was prejudicial to it. See *Nationwide Mutual Insurance Co. v. Lehman,* 743 A.2d 933, 941 (Pa. Super. 1999) ("Where the insured settles with a tort-feasor without the insurer's consent and does not prejudice the insurer's interests, the purpose of the consent-to-settle clause is lacking."), *relying upon, Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A.2d 193 (1977).

"[T]he purpose of the prejudice requirement is to allow an insurer to refuse payment only if its procedural handicap has led to disadvantageous, substantive results . . . [C]ourts have required a showing not only of the loss of substantial defense opportunities but also of a likelihood of success in defending liability or damages if those

---

standard from the common-law standard requiring the insurer to prove that the settlement to which it did not consent was unreasonable.

This court does not understand the distinction that Lloyd's is trying to draw, but, even if there were a difference between the policy's requirements and those of the common law, when read together the two requirements impose a greater, not a lesser, burden on Lloyd's to be reasonable in its dealings with its insureds.

opportunities had been available." *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 899 (3d Cir. 1987).

Where the insurer has failed to show that the proposed settlement was prejudicial to it, the court may grant summary judgment in the insured's favor. See *Nationwide,* 743 A.2d at 942.

In this case, Lloyd's urges that the $7 million settlement is prejudicial because it requires Lloyd's to pay too much.[4] In support, Lloyd's cites the two-tiered settlement as proof that the class plaintiffs were willing to take $6 million as opposed to $7 million. However, the class plaintiffs presumably did so only because Lloyd's refused to agree to the mediator's suggested settlement. In other words, in the absence of Lloyd's participation, class plaintiffs decided to accept what they could get from RAI and opted not to try to get blood from a stone.[5]

---

4. Lloyd's also argues that it was prejudiced by having to pay its defense costs in this litigation. But, that allegedly prejudicial situation was caused by Lloyd's own failure to consent to the settlement. Since the court finds the settlement reasonable, it necessarily finds that Lloyd's did not reasonably disclaim coverage and defend this suit.

5. Lloyd's apparently also objects to two-tiered settlements in general. However, the Third Circuit has held, on several occasions, that Pennsylvania courts would enforce a two-tiered conditional settlement, such as RAI entered into here, provided that the settlement is reasonable and entered into in good faith. See *Greater New York Mut. Ins. Co. v. The North River Ins. Co.,* 85 F.3d 1088 (3d Cir. 1996); *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 902 (3d Cir. 1987). This court sees no reason to hold differently, particularly since such a holding appears to be a logical extension of the Superior Court's views expressed in *Alfiero v. Berks Mutual Leasing Co.* 347 Pa. Super. 86, 500 A.2d 169 (1985) (settlement, which permitted injured party to satisfy judgment by asserting insured's claims

Furthermore, the record contains evidence of the following facts that contradict Lloyd's unsubstantiated claim that the settlement was unreasonably high:

"(1) Class plaintiffs claimed more than $100 million in damages in the underlying class action;

"(2) RAI's expert opined that a verdict of at least $100 million was possible and suggested $13.5 million as a reasonable settlement amount;

"(3) The court in the underlying class action denied RAI's motion to dismiss and certified the plaintiff class;

"(4) The impartial mediator recommended $7 million as a reasonable settlement amount;[6] and

"(5) RAI's other insurers agreed to pay their policy limits towards the settlement." See plaintiffs' motion for summary judgment, exhibits 6, 9, 15, 19, 24-25, 29.

Since Lloyd's has not offered persuasive evidence to show that the two-tiered settlement is unreasonable, prejudicial, and not entered into in good faith, it has no valid ground on which to object to participating in it.

---

against its insurer, but which did not permit injured party to attach any other assets of insured, was fair and reasonable).

6. In addition, the judge in the underlying class action approved the two-tiered settlement. See plaintiffs' motion for summary judgment, exhibit 33. However, this court acknowledges that the judge's opinion that the settlement was fair and reasonable is not conclusive or admissible against Lloyd's, which was not a party to that action. See *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 905-906 (3d Cir. 1987) ("the transcripts of the [settlement] hearings were admissible to indicate the terms of the settlement, but insofar as the district court permitted the jury to conclude that the settlement was reasonable on the basis of [the settlement] judge's statements . . . it erred.").

"Notwithstanding the insurer's contractual duty to its insured, the interests of insurers and their insureds are not always consistent and are frequently in conflict with one another. Indeed, an insured's interests are particularly at risk when a plaintiff expresses a willingness to settle for the policy limits. When it becomes clear that an insurer could settle a third-party claim against its insured for the limits of the policy, and thereby release its insured from any worry about an excess verdict, the insurer must be vigilant to ensure that it has a reasonable basis to try the case and that it is not breaching its fiduciary duty to its insured, based upon a small chance of a defense verdict." [7] *Birth Center v. St. Paul Companies Inc.,* 567 Pa. 386, 407 n.17, 787 A.2d 376, 389 n.17 (2001). See also, *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 901 (3d Cir. 1987) ("Insurance policies are risk-spreading devices. They exist primarily because the stakes of liability to an insured are greater than they are to an insurer, which can spread the loss across all its customers.").

In summary, then, this court finds that Lloyd's was contractually obligated to contribute to the settlement.

---

7. Lloyd's claims that, if the underlying class action had gone to trial and if the jury had found that RAI intentionally committed the alleged securities fraud, then there would be no coverage under the Lloyd's excess policy (or the Admiral and National Union policies either). However, since such a verdict was never rendered, and since the policies do cover settlements, Lloyd's point is moot and not helpful.

## IV. *Lloyd's Did Not Act in Bad Faith in Refusing To Consent to the Settlement*

RAI also seeks summary judgment on its claim that Lloyd's acted in bad faith in refusing to consent to the settlement.

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer." 42 Pa.C.S. §8371.

In this case, the court does not find that Lloyd's acted in bad faith in defending this action because it put forth legitimate, albeit not winning, arguments to justify its refusal to consent to the settlement RAI entered into with the plaintiff class.

## CONCLUSION

For the reasons discussed, both Lloyd's motion for summary judgment and RAI's cross-motion for summary judgment are granted, in part, and denied, in part, as set forth in the order filed simultaneously with this opinion.

## ORDER

And now, November 12, 2004, upon consideration of defendants' motion for summary judgment, and plain-

tiffs' cross-motion for summary judgment, the respective responses, the briefs in support and opposition, oral argument of September 20, 2004, all other matters of record, and in accord with the opinion being filed simultaneously, it is ordered that:

(1) Plaintiffs' cross-motion for summary judgment is granted, in part;

(a) Judgment is entered for plaintiffs on Count I (breach of contract);

(b) If the parties are unable to agree on the amount of damages, plaintiffs shall, within 30 days of the date of entry of this order, file a motion, with supporting documents, requesting the amount sought from defendants;

(2) The remainder of plaintiffs' cross-motion for summary judgment is denied;

(3) Defendants' motion for summary judgment is granted, in part;

(a) Plaintiffs' claim for reimbursement for the fees and costs incurred in the underlying class action is dismissed;

(b) Plaintiffs' claim for bad faith in Count III of the complaint is dismissed.

(4) The remainder of defendants' motion for summary judgment is denied.