**In re AMERICAN CAPITAL EQUIP-MENT, INC., and Skinner Engine Company, Inc., Debtors.**

**Nos. 01–23987–MBM, 01–23988–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

May 26, 2009.

**418**

Michael Kaminski, Robert G. Sable, Sally E. Edison, McGuire Woods LLP, Pittsburgh, PA, Nicholas A. Pasciullo, White and Williams, Pittsburgh, PA, for Debtors.

### *MEMORANDUM*

M. BRUCE McCULLOUGH,
Bankruptcy Judge.

**AND NOW,** this **26th day of May, 2009,** upon consideration of (a) the most recently proposed Chapter 11 plan—i.e., what has been characterized as the modified Fifth Plan (hereafter "the Fifth Plan")—of Skinner Engine Company, Inc., one of the above-captioned debtors acting as a Chapter 11 debtor-in-possession (hereafter "the Debtor"), as well as the disclosure statement that accompanies the Fifth Plan (hereafter "the Disclosure Statement"), (b) the various briefs that have been submitted by the Debtor and its co-proponents of the Fifth Plan (hereafter "the Co–Proponents"), both in support of the Disclosure Statement and in response to four discrete questions relative to the approval of the Disclosure Statement that were posed by the Court at a February 4, 2009 hearing, and (c) the various briefs that have been submitted by the various insurance companies that insured the Debtor pre-petition against asbestos liability, which insurance companies (hereafter "the Insurers") oppose the approval of the Disclosure Statement;

and in light of the motion that the Court itself raised in its April 9, 2009 Order of Court to the effect that, if the Court should reject the Disclosure Statement (on the ground that it describes a facially unconfirmable plan), then the instant Chapter 11 bankruptcy case(s) shall be converted to Chapter 7;

and subsequent to a hearing held on May 7, 2009, to consider all of the above matters,

it is **hereby determined that the Court shall issue an order to the effect** that (a) the Fifth Plan is unconfirmable for at least several reasons, (b) the Disclosure Statement, in describing the Fifth Plan, describes not only an unconfirmable plan but one that is also facially unconfirmable, (c) the Disclosure Statement consequently cannot be approved, that is it shall be rejected, (d) the Debtor and the Co–Proponents have been, and are, unable to effectuate a confirmable plan within a reasonable period of time, and (e) the instant Chapter 11 bankruptcy case(s) consequently shall be converted to Chapter 7.

The rationale for the Court's decision is set forth below.

### I.

At the outset, the Court notes that the Fifth Plan embodies a settlement—at least what is purported to be a settlement—of disputed, unliquidated, pre-petition asbestos liability claims that exist against the Debtor and the Insurers (both are named as defendants with regard to such claims, which claims are hereafter referred to as "the Asbestos Claims"), which settlement (hereafter "the Asbestos Claims Settlement") has been entered into between the asbestos claimants (hereafter "the Asbestos Claimants"), on the one hand, and the Debtor and the Co–Proponents, on the other hand, without the consent, and over the objection, of the Insurers. The Insur-

ers—at least Travelers Casualty and Surety Company (hereafter "Travelers"), one of the Insurers and a primary insurer of the Debtor—contend, and the Debtor and the Co–Proponents have not disputed, that the Insurers, by virtue of terms contained in the insurance policies to which they and the Debtor are parties (hereafter "the Insurance Policies"), possess a contractual right to defend the Debtor (as the insured) with respect to, and to settle as they deem expedient, any of the Asbestos Claims; the policy clauses setting forth such rights are hereafter referred to as "the Right to Defend and Settle Clauses." *See* May 1, 2006 Travelers' Objection to Modified Disclosure Statement, App. A, ¶ 11, at pp. 4–5 (Doc. No. 1042). Also not disputed is that the Insurance Policies contain clauses the substance of which is that the Debtor (as the insured) shall (a) not, except at its own cost, voluntarily make any payment, assume any obligation, or incur any expense (hereafter "the Voluntary Payment Clauses"), and (b) cooperate with the Insurers (hereafter "the Cooperation Clauses"). *See Id.* As the Court understands it, the Debtor and the Co–Proponents contend that, pursuant to Pennsylvania law, they may enter into the Asbestos Claims Settlement and thereby settle the Asbestos Claims without the consent of the Insurers notwithstanding the Insurers' rights that emanate from the foregoing insurance policy clauses (hereafter referred to as "the Insurers' Right to Control the Asbestos Litigation"), simply provided that the Asbestos Claims Settlement is reasonable and entered into in good faith. The Insurers dispute that Pennsylvania law allows the Debtor and the Co–Proponents to so settle. If Pennsylvania law does not allow for such a settlement, then, as a threshold matter, the Court could not approve the Asbestos Claims Settlement, in which case (a) the Fifth Plan is unconfirmable, (b) the Disclosure Statement describes a facially unconfirmable plan, and (c) the Disclosure Statement must be rejected.

■■■■ Does Pennsylvania law allow for such a settlement, that is a settlement of the Asbestos Claims without the consent of the Insurers notwithstanding the Insurers' Right to Control the Asbestos Litigation, simply provided that the Asbestos Claims Settlement is reasonable and entered into in good faith? The Court holds that such a settlement is not permissible under Pennsylvania law. The Court so holds for the following reasons. First, the law in Pennsylvania, stated broadly, is that an insured is not free to enter into a settlement of a claim absent an insurer's consent—no matter how reasonable such settlement is, even if such settlement has been entered into in good faith, and even if such insurer has not been prejudiced by such settlement—if such insurer (a) is possessed of insurance contract rights similar to the Insurers' Right to Control the Asbestos Litigation, (b) has undertaken to defend, and is defending, such insured with respect to such claim, and (c) does not act in bad faith or unreasonably in refusing to settle such claim. *See Fisher v. USAA Casualty Insurance Co.,* 973 F.2d 1103, 1106–1107 (3rd Cir.1992); *see also Epstein v. Erie Indemnity Co.,* 39 Pa.D. & C. 117, 126 (Pa.Com.Pl.1940) ("After the insurer has assumed control of the defense, the insured has no right to settle the claim"); 14A Summ.Pa.Jur.2d *Insurance* § 18:26 (West 2008) (citing *Epstein* decision); 14 *Couch on Insurance* § 203:38 (West 2008) ("Liability policies typically contain conditions which require the consent of the insurer with regard to any settlement, often referred to as the 'consent-to-settle' clause or *'voluntary payment' provision.* Pursuant to such provisions, an insured that enters into a settlement without the insurer's consent breaches the terms of the policy, thereby

voiding any coverage for the settlement."; "citing *Fisher* to the effect that a showing of prejudice is not required in relation to an application of the voluntary payment provision").[1] Second, the Court must find that the Insurers have undertaken to defend, and are defending, the Debtor with respect to the Asbestos Claims. With respect to the issue of defense of the Debtor, the Debtor and the Co–Proponents argue that such defense has been lacking only because the Insurers have apparently (a) attempted to impose some percentage of previous defense costs upon the Debtor, and (b) conducted their defense under a reservation of rights as to the issue of whether the Asbestos Claims are covered under the Insurance Policies. Such arguments are unavailing, however, because (a) what would arguably be relevant to the Court's analysis is not whether an attempt was made to impose certain of the aforesaid defense costs upon the Debtor but rather whether the Debtor has actually ever paid any portion of such defense costs, (b) the Debtor and the Co–Proponents represent to the Court that the Debtor, in fact, has been unable to pay any of such defense costs,[2] *see* Feb. 25, 2009 Debtor's Brief, at p. 12 (Docket No. 1302); Aug. 5, 2005 Debtor's Brief, at p. 5 (Docket No. 872), and (c) the law in Pennsylvania allows for the Insurers to defend under a reservation of rights, *see* 14A Summ.Pa.Jur.2d *Insurance* § 18:29 (West 2008) (citing Pennsylvania cases to that effect, as well as stating, in particular, that "[a]n insurer's participation in defending the insured does not affect its ability to later assert that the insured is not entitled to compensation from the insurer simply because it is not covered under the poli-

---

1. The Debtor and the Co–Proponents cite to several cases as supportive of their position regarding, and as being in disagreement with this Court's statement of, the status of relevant Pennsylvania law. *See* Feb. 25, 2009 Debtor's Brief, at pp. 10–11 (Docket No. 1302); Aug. 5, 2005 Debtor's Brief, at pp. 1–2 (Docket No. 872). Those cases so cited, however, rather than being in disagreement with this Court's statement of the law, are entirely consistent and reconcilable with such statement of the law. In particular, the insured was free to reasonably settle the claim without the consent of the insurer in (a) *Resource America, Inc. v. Certain Underwriting Members of Lloyd's*, 2004 WL 2580554 (Pa.Com.Pl. 2004), because such insurer was held to have acted unreasonably in refusing to settle such claim, *see Id.* at *4 ("RAI seeks summary judgment on the ground that Lloyd's unreasonably refused to consent to the settlement"), (b) *Greater New York Mutual Insurance Co. v. The North River Insurance Co.*, 85 F.3d 1088 (3rd Cir.1996), because such insurer was held to have acted in bad faith in refusing to settle such claim, *see Id.* at 1092–1093 ("central issue at trial was whether Greater New York acted in bad faith in refusing to settle" and "evidence was more than sufficient for the jury to conclude Greater New York had acted in bad faith in refusing to settle"), (c) *Trustees of the University of Pennsylvania v. Lexington Insurance Co.*, 815 F.2d 890 (3rd Cir.1987), because such insurer (i) lacked the right to control the litigation regarding such claim, and (ii) did not defend such insured with respect to such claim, *see Id.* at 893 ("The policy also provided, however, that Lexington had no right to assume the defense of suits against HUP") & *Id.* at 898–899 (Lexington was an excess carrier and "excess carriers generally have no right to control a lawsuit," coupled with "Lexington neither provided HUP's defense nor had a right to do so under the policy"), and (d) *Alfiero v. Berks Mutual Leasing Co.*, 347 Pa.Super. 86, 500 A.2d 169 (1985), because such insurer "repeatedly denied any and all obligation to defend or to indemnify" such insured and "thereby breached its duty to act in good faith," *see Id.* at 172.

2. It also matters not that the Insurers have apparently filed proofs of claim in the instant bankruptcy case seeking recovery of such defense costs allegedly imposed upon the Debtor given that, as a practical matter, the Debtor's bankruptcy estate is now a no-asset estate, meaning that such proofs of claim will never be paid.

cy").[3] Third, the Court holds that the Insurers have not acted in bad faith or unreasonably in refusing to settle the Asbestos Claims via the Asbestos Claims Settlement or on terms remotely similar to such settlement. The basis for such holding by the Court is that which supports the Court's holding, set forth below, that the Asbestos Claims Settlement is neither reasonable nor one that was entered into in good faith. Because of the foregoing, and given the Insurers' Right to Control the Asbestos Litigation, the Debtor may not enter into the Asbestos Claims Settlement without the consent of the Insurers, no matter (a) how reasonable such settlement is, (b) if such settlement has been entered into in good faith, and (c) if the Insurers are not prejudiced by such settlement. Because the Insurers have withheld their consent to the Asbestos Claims Settlement, such settlement is impermissible under Pennsylvania law.

However, even accepting *arguendo* that Pennsylvania law is as the Debtor and the Co–Proponents contend, they still may only settle the Asbestos Claims without the Insurers' consent, according to their statement of the law, if the Asbestos Claims Settlement is reasonable and entered into in good faith. Absent such reasonableness and good faith, the Court, once again, cannot approve the Asbestos Claims Settlement and the Fifth Plan will, consequently, be unconfirmable. Moreover, if such reasonableness and good faith are patently lacking, then (a) the Disclosure Statement describes a facially unconfirmable plan, and (b) the Disclosure Statement must be rejected.

Is the Asbestos Claims Settlement that is embodied in the Fifth Plan reasonable, as well as one that was entered into in good faith? The Court holds that the Asbestos Claims Settlement is neither reasonable nor one that was entered into in good faith.

■ The Asbestos Claims Settlement is not reasonable for several reasons. First, it is indisputable that no payment has ever been made by any of the Insurers on behalf of the Debtor to any of the Asbestos Claimants vis-a-vis the Asbestos Claims, notwithstanding that such claims have existed for roughly twenty (20) years. Such fact is strong evidence as to the futility of such claims, and it makes little, indeed no,

---

**3.** The Debtor and the Co–Proponents cite to the decisions in *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502 (1993), and *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, 95 Ohio St.3d 512, 769 N.E.2d 835 (2002), as supportive of the proposition that the Insurers, by law, have an obligation to defend on the Asbestos Claims without any reservation of rights. *See* Feb. 25, 2009 Debtor's Brief, at p. 12 (Docket No. 1302); Aug. 5, 2005 Debtor's Brief, at p. 5 (Docket No. 872). The Court has examined those two cases, however, and is bewildered as to their citation by the Debtor and the Co–Proponents given that neither decision even speaks to such issue, let alone can be appropriately cited for such proposition. Moreover, such position by the Debtor and the Co–Proponents is entirely at odds with the authority cited by the Court in the text immediately prior to the instant footnote. As for the reliance by the Debtor and the Co–Proponents upon the decision in *Presrite Corp. v. Commercial Union Ins. Co.*, 113 Ohio App.3d 38, 680 N.E.2d 216, 220 (1996), for the proposition that, if an insurer defends under a reservation of rights, then an insured no longer has a duty to cooperate, *see* Feb. 25, 2009 Debtor's Brief, at p. 11 (Docket No. 1302), the Ohio Court of Appeals subsequently clarified such decision to make clear that, in Ohio (for what it is worth to the instant matter), "where the insurer defends its insured, either in whole *or by a reservation of rights*, Sanderson[ *v. Ohio Edison Co.*, 69 Ohio St.3d 582, 635 N.E.2d 19 (1994) ] (a case relied upon by the *Presrite* court) does not apply and the insured is not 'at liberty to make a reasonable settlement without prejudice to their rights under the contract.' " *Westfield Insurance Co. v. D.C. Builders, Inc.*, 2004 WL 309272 at *7 (Ohio App.2004).

sense to settle claims that have thus far been so overwhelmingly unsuccessful. Second, most, if not practically all, of the Asbestos Claims were administratively dismissed pre-petition by the U.S. District Court for the Eastern District of Pennsylvania, which court presides over such claims given that they were filed on such court's Asbestos Products Liability Multi–District Litigation (MDL) docket. Such fact also serves to substantiate that such claims are not very strong, so that, once again, it makes little, if not any, sense for such claims to be settled. Finally, there is really no valid reason for the Debtor to even care if the Asbestos Claims get settled given that (a) the Debtor is defunct (i.e., out of business), (b) the Debtor will never again engage in business, (c) the Debtor is in bankruptcy, (d) no funds practically exist in the Debtor's bankruptcy estate in any event to pay on any judgment that the Asbestos Claimants might obtain in excess of the Debtor's insurance (hereafter referred to as an "excess judgment"), and (e) any excess judgment obtained would, therefore, be practically worthless. In light of the foregoing undisputed facts, it makes absolutely no sense for the Debtor to settle any of the Asbestos Claims absent the consent of the Insurers, and settlement without such consent (as is the case with respect to the Asbestos Claims Settlement), the Court holds, is thus *per se* unreasonable.

■ The Court holds that the Asbestos Claims Settlement has also not been entered into in good faith. The ground for such holding is that the Asbestos Claims Settlement is the result of patent collusion between the Debtor and the Co–Proponents, on the one hand, and the Asbestos Claimants, on the other hand. Such collusion is readily apparent when one considers the terms of the Fifth Plan. As part of the Asbestos Claims Settlement embodied in the Fifth Plan, the Asbestos Claimants may take advantage of (i.e., opt into) an alternative dispute resolution process to resolve their claims, which process (referred to as the "Court Approved Distribution Procedures" or "CADP" by the Debtor and the Co–Proponents), when compared to that which the Asbestos Claimants must otherwise adhere to—i.e., court litigation, in the U.S. District Court for either the Eastern District of Pennsylvania (outside of bankruptcy) or the Western District of Pennsylvania (in bankruptcy), with the terms of such litigation imposed by the Federal Bankruptcy Rules, the Federal Rules of Civil Procedure, and any other requirement of constitutional due process—is indisputably procedurally much more favorable and, thus, advantageous to the Asbestos Claimants' cause (hereafter "the Alternative Dispute Resolution Process"). In return for the opportunity to take advantage of the Alternative Dispute Resolution Process, the Asbestos Claimants must—and as this Court surmises, they are eminently more than happy to—agree to give to the Debtor 20% of any insurance proceeds that the Asbestos Claimants would obtain from the Insurers if, and to the extent that, they prevail on their claims. Important to note is that, absent the Asbestos Claims Settlement, the (a) Debtor is left with no means of obtaining any of the insurance proceeds that might be paid out on behalf of the Asbestos Claims, and (b) Asbestos Claimants, as set forth above, will be left to pursue the Asbestos Claims via court litigation, which litigation, as also set forth above, has thus far been very unsuccessful. That the Debtor and the Co–Proponents, on the one hand, and the Asbestos Claimants, on the other hand, are colluding becomes even more apparent when one recognizes that, with respect to any of the Asbestos Claims, the Debtor can obtain the aforesaid 20%

cut of insurance proceeds (the 20% Surcharge, as the Debtor and, hereafter, this Court refers to it) only if the Debtor's defense—or, more accurately, the Insurers' defense of the Debtor—with respect to such claim(s) is unsuccessful; because of the foregoing fact, the Debtor is nothing but financially incentivized to sabotage its own defense or, more aptly, the Insurers' defense of itself vis-a-vis the Asbestos Claims. As a consequence of the foregoing realizations, the Court is not surprised to see the extreme extent to which due process protections/procedural safeguards afforded to the Insurers via the Federal Bankruptcy Rules and the Federal Rules of Civil Procedure have been relaxed by relevant terms of the Fifth Plan. Indeed, because, as set forth above, there is really no valid reason for the Debtor to even care if the Asbestos Claims get settled—given that, as explained above, even if such claims are not settled, any excess judgment obtained by the Asbestos Claimants would be worthless in any event—the Court can only conclude that the Debtor (a) wishes to settle for one reason, that is so as to obtain the 20% Surcharge, (b) consequently hopes that its defense—or, more aptly, the Insurers' defense of itself—will be unsuccessful, given that such defense must fail in order for the Debtor to obtain such surcharge, and (c) has attempted to facilitate the defeat of such defense by proposing the Fifth Plan (in particular, by attempting thereby to severely relax such due process protections/procedural safeguards otherwise afforded to the Insurers). The Court attaches to all of the foregoing collectively the label "collusion." [4] However, whether it be collusion or not is not really important; what is important is that all of the foregoing demonstrates bad faith on the part of the Debtor, the Co–Proponents, and the Asbestos Claimants in entering into the Asbestos Claims Settlement.

Therefore, the Asbestos Claims Settlement is neither reasonable nor one that was entered into in good faith. That such settlement is neither reasonable nor one that was entered into in good faith constitutes an additional reason why such settlement is impermissible under Pennsylvania law.

Since the Asbestos Claims Settlement is forbidden by Pennsylvania law, the Fifth Plan, pursuant to 11 U.S.C. § 1129(a)(3), cannot be confirmed. Furthermore, given that the Fifth Plan embodies the Asbestos Claims Settlement, and since, as just set forth above, such settlement was entered into in bad faith, the Court is compelled to conclude that the Fifth Plan itself has been proposed in bad faith; such conclusion dictates a holding, as well, that the Fifth Plan, pursuant to § 1129(a)(3), cannot be confirmed. Moreover, because the Asbestos Claims Settlement is forbidden by Pennsylvania law, and particularly given that the unreasonableness of, and the bad faith that accompanies, such settlement is transparent, the Disclosure Statement describes a facially unconfirmable plan. Therefore, the Disclosure Statement must be rejected.

---

**4.** A consent judgment was similarly found to have been procured by collusion in *Carlson v. Zellaha*, 240 Neb. 432, 482 N.W.2d 281 (1992), wherein the party who obtained such consent judgment then proceeded against the losing party's insurer. Such collusion was found to have existed, *inter alia*, because (a) "[t]he amount of the judgment was unreasonable given the improbability of the plaintiff's [(party who obtained consent judgment)] success against Zellaha [(i.e., the insured)]," and (b) "Zellaha [(i.e., the insured)] was to be compensated $575 out of the first $4,000 collected in exchange for consenting to the judgment." *Id.* at 284.

 Because of the rulings contained in the immediately preceding paragraph herein, the Court need not determine whether (a) confirmation of the Fifth Plan (and accompanying court approval of the Asbestos Claims Settlement) would operate to breach the Right to Defend and Settle Clauses, the Voluntary Payment Clauses, and the Cooperation Clauses, thereby voiding the coverage afforded by the Insurance Policies, or (b) the very existence of the Asbestos Claims Settlement, the fact that such settlement was entered into without the consent of the Insurers, and the aforementioned collusion operate to breach the aforesaid insurance policy clauses, thereby voiding the aforesaid insurance coverage. Since the Court need not make the foregoing determinations, it will simply rule summarily that, if it were to confirm the Fifth Plan, such confirmation would operate to breach the aforesaid insurance policy clauses, thereby voiding the coverage afforded by the Insurance Policies.[5] Such breach of the Insurance Policies would serve to make the Fifth Plan unconfirmable pursuant to § 1129(a)(3). As well, if the Insurance Policies were to be voided by virtue of confirmation of the Fifth Plan, then no money could be obtained through such contracts, which eventuality would serve to make the Fifth Plan not financially viable; such lack of prospective viability means that confirmation of the Fifth Plan would most certainly be followed by immediate liquidation, which prospect, by itself, means that, pursuant to 11 U.S.C. § 1129(a)(11), the Fifth Plan is unconfirmable. Moreover, that confirmation of the Fifth Plan would operate to ultimately void the coverage afforded by the Insurance Policies is, the Court concludes, obvious from a simple reading of the Disclosure Statement, which means that (a) the Disclosure Statement describes a facially unconfirmable plan, and (b) the Disclosure Statement must accordingly be rejected.

## II.

Although the Court, as set forth above, has now concluded that the Fifth Plan is unconfirmable, that the Disclosure Statement describes a facially unconfirmable plan, and that the Disclosure Statement must accordingly be rejected, the Court identifies two additional discrete reasons that dictate the foregoing conclusions. Because such reasons are not really necessary to support the Court's decision, the Court shall address them in relatively brief fashion.

 First, the Court holds that the 20% Surcharge constitutes an assignment by the Asbestos Claimants—in particular, those Asbestos Claimants that opt into the Alternative Dispute Resolution Process—to the Debtor (i.e., the Debtor's bankruptcy estate) of 20% of any insurance proceeds that the Asbestos Claimants might obtain in the future from the Insurers vis-a-vis the subsequent liquidation of the presently unliquidated Asbestos Claims via the Alternative Dispute Resolution Process; such assignment will occur the moment that an Asbestos Claimant opts into the Alternative Dispute Resolution Process. The Court holds that such assignment is impermissible because (a) unliquidated personal injury tort claims, such as are the Asbestos Claims, can't themselves be assigned pre-judgment, see 3 P.L.E.2d Assignments § 9 at 71 (Bender 2006), (b) the Pennsylvania courts have yet to rule as

---

5. At least at the present time, the Court will abstain entirely from ruling as to whether the coverage afforded by the Insurance Policies has already been voided by virtue of the very existence of the Asbestos Claims Settlement, the fact that such settlement was entered into without the consent of the Insurers, and the aforementioned collusion.

to whether insurance proceeds emanating from such claims can be assigned pre-judgment, and (c) the Pennsylvania Supreme Court, this Court predicts, would rule, in large part for the reasons set forth by the Insurers at pages 6–8 of their February 25, 2009 Joint Brief (Docket No. 1301), that such insurance proceeds cannot be assigned pre-judgment. The Debtor and the Co–Proponents argue that the 20% Surcharge does not constitute a present assignment at all of such insurance proceeds (i.e., an assignment as of the moment of opt-in). The Court understands the Debtor and the Co–Proponents to really raise but two apparent grounds in support of such argument, namely that (a) the Fifth Plan, when dealing with the 20% Surcharge, does not utilize the word "assign" or any variation thereof, and (b) the 20% Surcharge is merely a voluntary contribution by the opt-in Asbestos Claimants to the Debtor to be made upon receipt of insurance proceeds, which contribution is thus only made at the whim of the Asbestos Claimants. Unfortunately for the Debtor and the Co–Proponents, such grounds are without merit. Dealing first with the technical language issue, it matters not whether the term "assign" or any variation thereof appears in a written assignment. *See* 3 P.L.E.2d *Assignments* § 21 at 75. As for the latter of the grounds raised, the "voluntary contribution" characterization of the 20% Surcharge by the Debtor and the Co–Proponents is belied by the actual language of the Fifth Plan to the effect that "upon the Asbestos Claimant submitting his or her claim to the ... [Alternative Dispute Resolution Process], he or she shall thereby have agreed to pay the [20%] Surcharge ... from any amounts paid on account of the Asbestos Claim under and through the ... [Alternative Dispute Resolution Process]," *see* Fifth Plan, § 1.53 (Docket No. 1030); by virtue of such language, any of

the Asbestos Claimants that opt in are divested of control of that portion of the insurance proceeds that are first utilized to satisfy the 20% Surcharge.

■■■ Because the 20% Surcharge constitutes an impermissible assignment under Pennsylvania law, the Fifth Plan, which relies on such impermissible assignment, is forbidden by law. Consequently, the Fifth Plan is unconfirmable pursuant to § 1129(a)(3). As well, the Disclosure Statement, for that reason, describes a facially unconfirmable plan, which means that the Disclosure Statement must be rejected.

■■■ Second, the Court notes that provisions of the Alternative Dispute Resolution Process repeatedly call for this Court, in its official capacity, to make final binding determinations as to the validity and valuation of contested opt-in Asbestos Claims, that is such process ultimately requires this Court, in its official capacity, to finally liquidate such claims, and without any chance for review by another court. *See* Fifth Plan, § 1.24 (Docket No. 1030); CADP, ¶¶ B.2(a), C & F.2. Unfortunately for the Debtor and the Co–Proponents, this Court lacks authority to finally liquidate such claims, and authority does not exist, as well, for liquidation of such claims by this Court without review by another court. The Court so holds because (a) the liquidation of unliquidated personal injury tort claims, as are the opt-in Asbestos Claims, constitute(s) a noncore proceeding, *see* 28 U.S.C.A. § 157(b)(2)(B) (West 2008), (b) the Court may only issue proposed findings of fact and conclusions of law to the district court with respect to noncore proceedings, that is this Court is powerless to make a final determination regarding the liquidation of any opt-in Asbestos Claims that are disputed, *see* 28 U.S.C.A. § 157(c)(1) (West 2008), and (c) the Dis-

trict Court for the Western District of Pennsylvania, since it must enter final orders or judgments with respect to noncore proceedings dealt with by this Court, necessarily must conduct a review of any decision that this Court might make regarding the liquidation of any disputed opt-in Asbestos Claims, *see Id.* The Court understands the Debtor and the Co–Proponents to respond to the foregoing by contending, in turn, that (a) the Alternative Dispute Resolution Process constitutes part of a settlement of the Asbestos Claims, and (b) this Court's final liquidation of contested opt-in Asbestos Claims, because it is a part of such process, can be done regardless of this Court's lack of authority to so finally liquidate outside of such process. By logical extension, this Court can only presume that, by arguing that this Court can so finally liquidate within the confines of the Alternative Dispute Resolution Process notwithstanding this Court's lack of authority to otherwise so finally liquidate, the Debtor and the Co–Proponents argue, as well, that this Court (a) is free to act (and will act when finally liquidating within the confines of the Alternative Dispute Resolution Process) other than as the presiding Court that it is vis-a-vis the instant bankruptcy case—for instance, as an arbitrator, mediator, or something else, and (b) may thereby transgress the legal confines of its official position. Unfortunately for the Debtor and the Co–Proponents, this Court is unaware of any legal authority that would permit it to so act while, at the same time, it also acts as the presiding Court. Furthermore, the relevant provisions of the Fifth Plan and CADP cited to above refer to this Court as "the Bankruptcy

Court" when it makes its final determinations thereunder, which indicates to the Court that the Debtor and the Co–Proponents expect that this Court, when making final determinations within the confines of the Alternative Dispute Resolution Process, will only act within its official capacity as the presiding Court in the instant bankruptcy case. Acting in such official capacity, this Court, as set forth above, may not finally liquidate contested opt-in Asbestos Claims, and even to the extent that it can act with respect to such claims, such action will necessarily be reviewable by another court.[6]

The Alternative Dispute Resolution Process thus violates 28 U.S.C. § 157(b)(2)(B) and 28 U.S.C. § 157(c)(1) and is, therefore, forbidden by law. Because the Fifth Plan incorporates the Alternative Dispute Resolution Process, and since, as just set forth, such process is forbidden by law, so too is the Fifth Plan itself forbidden by law. Consequently, the Fifth Plan is unconfirmable pursuant to § 1129(a)(3). As well, the Disclosure Statement, for that reason, describes a facially unconfirmable plan, which means that the Disclosure Statement must be rejected.

### III.

■ Having now ruled that the Fifth Plan is unconfirmable, and for several reasons, the Court now concludes, as well, that a present conversion of the instant bankruptcy case(s) to Chapter 7 is appropriate. Such conversion is called for because the Debtor and the Co–Proponents have been, and are, unable to effectuate a confirmable plan within a reasonable peri-

---

**6.** The Court observes that the Debtor and the Co–Proponents could probably remove the Court from the Alternative Dispute Resolution Process altogether and thereby rectify the flaw that the Court has just identified regarding such process. However, such removal of the Court would serve to make the Asbestos Claims Settlement, which incorporates the Alternative Dispute Resolution Process, even more unreasonable than it has already been determined to be by the Court.

od of time. Such basis for conversion remains a viable basis for conversion given that "the list of examples of cause [for conversion] under [11 U.S.C.] section 1112(b)[ (4) ] is not exhaustive." 7 *Collier on Bankruptcy*, ¶ 1112.04[5][b] at 1112–38 (Bender 2008).

The Court concludes that the Debtor and the Co–Proponents have been unable to effectuate a confirmable plan within a reasonable period of time because (a) they have now unsuccessfully proposed at least five Chapter 11 plans within a span of some five to six years, (b) a span of five to six years is, if anything, longer than a reasonable period of time within which to get a Chapter 11 plan confirmed, and (c) five opportunities to propose a Chapter 11 plan is, if anything, more than a reasonable number of opportunities to produce a confirmable plan.

The Court also concludes that the Debtor and the Co–Proponents will not be able to effectuate a confirmable plan going forward, regardless of how much more time the Court might afford such parties to produce such a plan. The Court so concludes because (a) such parties have already expressed to the Court, at several hearings, their unwillingness to rectify certain of the flaws that the Court has identified with respect to the Fifth Plan, such as, for instance, (i) removal of—not merely a

reduction to—the 20% Surcharge, and (ii) substantial upgrades to the due process protections to be afforded the Insurers within the Alternative Dispute Resolution Process, (b) it does not even identify any incentive for such parties to rectify such flaws, given, as set forth above, that the Debtor wishes to settle the Asbestos Claims for but one reason, that is so. as to obtain the 20% Surcharge, (c) even if such parties were to rectify such flaws, such rectification would almost certainly beget new flaws,[7] and (d) certain of such flaws identified by the Court likely cannot be rectified no matter what such parties do, such as, for instance, such parties' failure to obtain the consent of the Insurers to a settlement of the Asbestos Claims, which consent almost assuredly will never be forthcoming (at least not with respect to a Chapter 11 plan that would rival any of those that have been proposed thus far).

For all of the foregoing reasons, the Court shall convert the instant bankruptcy case(s) to Chapter 7 forthwith.

### ORDER OF COURT

**AND NOW**, this **26th day of May, 2009**, for the reasons, and utilizing the nomenclature, set forth in the accompanying Memorandum of the same date, it is hereby **ORDERED, ADJUDGED, AND DECREED** that (a) the Fifth Plan is uncon-

---

**7.** For instance, if such parties were to remove the 20% Surcharge altogether from the Fifth Plan, such removal would operate such that the Fifth Plan would no longer be viable given that the 20% Surcharge is the only means by which (a) the Alternative Dispute Resolution Process can be funded, and (b) the Debtor can obtain any recovery for general creditors (as opposed to the Asbestos Claimants) of the Debtor. Absent any recovery for general creditors, resolution of the Asbestos Claims would also no longer have any effect upon the administration of the Debtor's bankruptcy estate given that (a) the amount of assets that presently exist in such estate is such that none

would ultimately reach the Asbestos Claimants, and (b) resolution of such claims, by itself, would thus not impact such estate; of course, without such impact, the Court would lack subject matter jurisdiction altogether to address resolution of the Asbestos Claims. *See Halper v. Halper,* 164 F.3d 830, 837 (3rd Cir.1999) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984), to the effect that bankruptcy jurisdiction generally lies only if " 'the outcome of th[e] proceeding [in question] could conceivably have any effect on the [Debtor's] estate being administered in bankruptcy' ").

firmable for at least several reasons, (b) the Disclosure Statement, in describing the Fifth Plan, describes not only an un-confirmable plan but one that is also facial-ly unconfirmable, (c) the Disclosure Statement consequently cannot be approved, that is it must be rejected, (d) the Debtor and the Co–Proponents have been, and are, unable to effectuate a confirmable plan within a reasonable period of time, and (e) the instant Chapter 11 bankruptcy cases consequently shall be, and thus are, converted to Chapter 7.

The Debtor's counsel shall serve this Memorandum and Order on all members of the service list.